#057535

PAUL F. DAUER, BAR NO. 37428
ERIC O. JEPPSON, BAR NO. 212287
LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
TELEPHONE: (916) 325-4000
TELECOPIER: (916) 325-4010

Attorneys for Plaintiff
United Partition Systems, Inc.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED PARTITION SYSTEMS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | Case No. 03-1242C<br>Judge:<br>**COMPLAINT** |

## PARTIES

1. Plaintiff, United Partition Systems, Inc. ("United"), is a California corporation in the business of designing, manufacturing, and construction of modular buildings with its principal office and place of business in Ontario, California.

2. The governmental entity of the defendant, the United States, which United specifically alleges this complaint against is the Department of the Air Force, 56th Contracting Squadron (the "Air Force") at Luke Air Force Base ("Luke AFB") in Arizona.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

## JURISDICTION AND PROCEDURAL HISTORY

3. Effective July 29, 1999, United and General Services Administration entered into FSS/MAS GSA contract No. GS-07F-0343J for the provision of prefabricated buildings, among other things, for a term extending through June 30, 2004. A true and correct copy of the July 29, 2003 contract is attached hereto as Exhibit 1.

4. On March 20, 2000, the Air Force issued solicitation number F0260400BA006 via electronic email to all prospective FSS/MAS Schedule Holders to design, manufacture, and construct a one-story modular building at Luke AFB. A true and correct copy of the March 20, 2000 electronic email is attached hereto as Exhibit 2.

5. On or about June 5, 2000 the Air Force awarded Contract No. F02604-00-F-A0334 to United in the amount of $108,404.00 for the design, manufacture, and construction of the modular building at Luke AFB. A true and correct copy of the June 5, 200 contract is attached hereto as Exhibit 3.

6. As set forth in more detail below, commencing in approximately August 2000, disputes between the Air Force and United arose regarding whether United's work satisfied the contract's requirements and whether United's work was substantially complete.

7. On January 25, 2002, United's attorney Best Best & Krieger LLP sent a letter to the Air Force contracting officer enclosing United's monetary claim against the Air Force in the amount of $108,404.00. A true and correct copy of the January 25, 2002 letter is attached hereto as Exhibit 4.

8. On March 20, 2002, the Air Force contracting officer sent United a letter notifying United that it expected to issue a final decision on or before April 30, 2002. A true and correct copy

of the March 25, 2002 letter is attached hereto as Exhibit 5.

9. On April 23, 2002 the Air Force contracting officer sent United a letter notifying United that it expected to issue a final decision no later than May 30, 2002. A true and correct copy of the April 23, 2002 letter is attached hereto as Exhibit 6.

10. On May 20, 2002, the Air Force contracting officer issued a letter purporting to be a final decision denying United's claim and asserted a claim for excess reprocurement costs against United. A true and correct copy of the May 20, 2002 decision is attached hereto as Exhibit 7.

11. On August 23, 2002, United timely appealed the Air Force contracting officer's denial of its claim and the Air Force's claim for excess reprocurement costs against United to the Armed Services Board of Contract Appeals ("ASBCA"). For administrative convenience, the ASBCA docketed United's appeals as ASBCA Nos. 53915 and 53916 respectively.

12. The Air Force subsequently moved to dismiss the appeals for lack of jurisdiction claiming that United's notice of appeals were not timely filed.

13. In reviewing the motion, the ASBCA, *sua sponte*, raised the issue of whether the Air Force contracting officer had authority to issue a final decision to United's claim.

14. The ASBCA never determined the question of United's timeliness because it dismissed the appeals for lack of jurisdiction based on the fact that the Air Force contracting officer was not entitled to issue a final decision on the claim, but rather, was required to refer the claim to the GSA contracting officer for decision. The Air Force contracting officer's final decision was invalid, resulting in a lack of jurisdiction by the ASBCA.

15. Since filing its claim on January 25, 2002, United has not received a valid final

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

decision to date.

16. Under Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. section 605 subdivision (c)(5), because the contracting officer failed to issue a valid final decision within the time period required, United's claim is deemed denied by the contracting officer.

17. As authorized under CDS 41 U.S.C. section 605 subdivision (c)(5), United hereby commences suit with the Court of Federal Claims on the deemed denial of its claim.

18. Pursuant to the CDA, 41 U.S.C. sections 601-613, the Court of Federal Claims' has jurisdiction over United's appeal to the Air Force contracting officer's "deemed" denial.

## STATEMENT OF FACTS

19. United realleges each and every allegation set forth in paragraphs 1 through 18 herein.

20. As previously alleged, the Air Force awarded Contract No. F02604-00-F-A0334 to United in the amount of $108,404.00 for the design, manufacture, and construction of the modular building at Luke AFB on or about June 5, 2000. See Exhibit 3 attached hereto.

21. The delivery date of the modular building to Luke AFB was on or before July 31, 2000.

22. Prior to the commencement of the design, manufacture, and construction, the Air Force directed various changes and modifications to the design of the modular buildings. After the implementation of the design changes directed by authorized Air Force personnel, United completed the design and construction drawings for the modular buildings to be constructed at Luke AFB.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

23. The design and construction drawings were approved and signed by Todd Tetrault, the second of eight Air Force contracting officers on or about June 9, 2000. A true and correct copy of the June 9, 2000 approval is attached hereto as Exhibit 8.

24. Once the design and construction drawings were approved, United, on or about June 9, 2000, began manufacturing the modular buildings.

25. The manufacturing of the modular buildings was completed, and the buildings were shipped to Luke AFB, on July 28, 2000 pursuant to the Statement of Work ("SOW"), page 1, and the June 5, 2000 contract. A true and correct copy of the SOW is attached hereto as Exhibit 9.

26. On July 28, 2000, United transported personnel and resources from California to Luke AFB to begin the construction and installation process.

27. On or about August 17, 2000, United transported the Heating Ventilation Air Conditioning ("HVAC") units for the modular buildings to Luke AFB for the completion of the project pursuant to the SOW page 2.

28. On or about August 18, 2000, the Air Force had not removed the existing swamp coolers for installation of the new HVAC units. The removal of the existing swamp coolers was not within United's original scope of work under the contract. On August 18, 2000, the fifth contracting officer, Brian Milam, directed the suspension of the installation work due to the lack of access to install the HVAC units, and United's crew ceased its work pursuant to that direction until further notice by the Air Force on how to proceed with the swamp cooler issue.

29. The Air Force was responsible for preparing the installation site, including removal of existing swamp coolers to permit United to install new HVAC units. Mr. Milam admitted in a memorandum dated August 18, 2000, that the contractor was not required to remove the swamp

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

coolers and the coolers were not removed by military personnel as agreed by Captain Hammil, CE, nor did the CE provide direction on removal. A true and correct copy of the August 18, 2000 memorandum is attached hereto as Exhibit 10.

30. On or about August 18, 2000, for the first time, Mr. Milam requested data on the fire rating for the wall systems used in the modular buildings in the approved design. United responded immediately with documentation provided by its suppliers verifying use of Class A materials. United provided invoices showing proof of purchase and supplier phone numbers for additional questions.

31. On or about August 23, 2000, United submitted a proposal for, among other things, removal of the existing swamp coolers so that it could proceed with the completion of the project. A true and correct copy of the August 23, 2000 proposal is attached hereto as Exhibit 11.

32. On or about September 11, 2000, United attempted to complete the project pursuant to the terms and conditions of the contract and the bid to remove the swamp coolers. However, United had not received approval of its proposal for the removal of the existing swamp coolers from the Air Force.

33. Also, on September 11, 2000, United had not received any payments on the contract. Accordingly, on or about September 19, 2000 United spoke with Air Force Contracting Officer Robert R. Kelley, the sixth of eight contracting officers, and requested a partial payment on the contract based on materials and labor performed to that point in time. Mr. Kelley indicated that if United would send an invoice, he would process the request for payment. On September 19, 2000, United promptly sent Invoice # 9404-1 totaling $97,563.60. A true and correct copy of the September 19, 2000 invoice is attached hereto as Exhibit 12.

34. United had substantially performed all work required by the contract. The estimated

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

value of the amount of work not yet completed was only about $6,000.00 (approximately six percent of the total contract price). The work yet to be completed consisted of:

(1) installation only of the previously delivered HVAC system units at an estimated cost of $1,000.00 (United was excused from performance of the HVAC units because the Air Force never provided direction to United to resume work);

(2) installation only of the previously delivered carpet at an estimated cost of $425.00 (this was the last task United planned to perform in order to avoid damaging the carpet prior to final acceptance);

(3) removing the three existing modular buildings at an estimated cost of $4,000.00 (United did not perform this portion of the contract because the Air Force personnel occupying these buildings first needed the modular building that United constructed to be accepted so that they could move into that building before their existing buildings could be removed); and

(4) final clean up and punch list related work at an estimated cost of $350.00 (United did not perform this portion of the contract because the Air Force failed to provide direction on the above remaining items which were necessary to be completed prior to final clean up and punch list related work).

35. Contrary to the representation of Mr. Kelly that payments on the invoices were forthcoming, no interim or progress payments had been made up to October 12, 2000.

36. On October 12, 2000, Mr. Kelley sent a letter indicating that United had to complete punch list items before *final* payment could be made. A true and correct copy of the October 12, 2000 letter is attached hereto as Exhibit 13. Attached to that letter was a slide presentation illustrating the punch list items dealing only with minor cosmetic repairs that would take very little

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

effort to complete (approximately $350.00 worth of work). In this punch list, however, no reference was made to HVAC installation, installing carpet, or the removal of the three existing modular buildings. No reference was included in this punch list referencing "Class A fire rated" walls and cladding or "UL approved raceway channels."

37. From October 13 through December 5, 2000, the Air Force failed to provide United with a final punch list of work to complete. During this period, the Air Force failed to return any phone calls so that United could complete the project. United did not request final payment, but rather only a progress payment until the Air Force could resolve the problem with the installation of the HVAC system. Between this period of time, the Air Force failed to give United any direction to resolving the issue with the HVAC installation or "Class A fire rated" walls and cladding or the "UL approved raceway channels."

38. On or about December 6, 2000, United received a "Cure Notice" dated November 28, 2000 from Mr. Stanley D. Janders, the then contracting officer of the Air Force (Mr. Janders, who was the third of eight contracting officers, was again involved in the contract administration at this point in time). The Cure Notice contended that the walls in the modular building were not "Class A fire rated" and did not have "UL approved raceway channels." A true and correct copy of the December 6, 2000 Cure Notice is attached hereto as Exhibit 14.

39. The Air Force contended that the walls of the modular buildings at issue herein did not meet fire retardant standards as a result of the vinyl cladding. No contract provision or approved plan requires that cladding for walls, otherwise Class A fire rated, must independently or conjunctively have such a rating.

40. On or about May 7, 2001, and again on or about May 9, 2001, the Air Force, by and through Deputy Fire Chief Bernard Clemens (the seventh of the eight contracting officers), requested documentation showing that the vinyl used in the modular buildings was Class "A" fire rated. In

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

these letters Mr. Clemens stated that "[t]he vinyl issue is the only requirement needed to be resolved before work can continue." True and correct copies of the May 7, 2001 letter and the May 9, 2001 letter are attached hereto as Exhibits 15 and 16 respectively.

41. Again, United reiterated its position that there is no such thing as Class "A" vinyl. To the extent the Air Force required Class "A" rated wall cladding, it was a change in the contract work and the Air Force breached its duty to direct such change in writing, providing the specifications for the wall cladding material and an adjustment in time and compensation. United had no duty to, and could not, proceed without the appropriate change order.

42. On or about June 25, 2001 United received a "Show Cause Notice" from the then Contracting Officer for the Air Force, Robert R. Kelley, indicating that the government was considering terminating the contract for United's alleged default. A true and correct copy of the June 25, 2001 notice is attached hereto as Exhibit 17.

43. United repeatedly requested clarification and direction in identifying the wall cladding materials which the Air Force wanted. True and correct copies of letter requesting such clarification and direction are attached hereto as Exhibits 18, 19, and 20 respectively. In breach of its contractual duty, the Air Force failed and refused to respond with clarifying information necessary for United to perform its contractual obligations.

44. On or about July 12, 2001, United responded to the Show Cause Notice indicating that United's failure to complete Contract No. F02604-00-F-A0334 was due to the actions, or lack thereof, of the Air Force. Additionally, United's response to the Show Cause Notice once again informed the Air Force that United had paid for 100% of the materials and over 90% of the labor associated with the contract and that it had received no payments on the contract. A true and correct copy of the July 12, 2001 response is attached hereto as Exhibit 21.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

45. At no time has the Air Force disputed the adequacy of United's response to the Show Cause Notice.

46. The Air Force changed contracting officers during the contract over eight times. This compounded the difficulty of any communication efforts by United which had a major effect on prolonging the performance of the contract. Even though this made communication difficult, United made reasonable attempts to request information and clarification in order to perform its contract obligations. However, regardless of its many requests, United was unable to acquire a single statement of resolution from any of these eight different contracting officers.

47. By letter of July 24, 2001, United provided Air Force Brigadier General Stephen T. Sargeant of the Office of Public Affairs a complete summary of the principal circumstances relating to performance of the contract, including a number of acts by the Air Force which were in breach of its duties to United. A true and correct copy of the July 24, 2001 letter is attached hereto as Exhibit 22.

48. Subsequent to United's July 24, 2001 summary letter, a meeting was scheduled with Air Force contracting officer Mr. Ron Siler (who was the Air Force's eighth contracting officer on the project) for the last part of July to discuss resolution of the issues relating to the contract. Mr. Siler cancelled the meeting two days before the meeting was to take place. On August 1, 2001, United's employee, Mike Kaminski, spoke with Mr. Siler regarding cancellation of that meeting and tried to arrange another time for a meeting. Mr. Siler insisted on meeting the next day, August 2, 2001, but Mr. Kaminski was unable to attend due to an emergency dental appointment. Mr. Kaminski requested that the meeting be held another date with adequate notice. Mr. Siler denied this request. See Exhibit 20.

49. Following the failed attempts to schedule a meeting, and in an effort to resolve the outstanding issues, United's Vice President, Sue Kaminski, called and wrote the Defense Hotline

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

of the Department of Defense on August 22, 2001 with her concerns. In that letter, Ms. Kaminski indicated that she had a conversation with Mr. Siler on August 21, 2001. During that conversation, Mr. Siler said that United would have to write a letter to which the Air Force would respond "in the next 7 to 10 days from their legal department." United reaffirmed in this letter that if the Air Force could just fax over the punch list of items to work on, that United would work to get them resolved. A true and correct copy of the August 22, 2001 letter is attached hereto as Exhibit 23.

50. No response was received from the Air Force within 7 to 10 days as Mr. Siler represented. In fact, the next response United received from the Air Force was the "Amendment of Solicitation/Modification of Contract" dated September 14, 2001. A true and correct copy of the September 14, 2001 termination modification is attached hereto as Exhibit 24. This modification was to terminate the order for default. No other direction was provided to United with regards to the termination in the September 14, 2001 termination modification.

51. United protested on November 1, 2001, through its counsel Best Best & Krieger LLP to the Air Force regarding the September 14, 2001 termination modification. A true and correct copy of the November 1, 2001 protest is attached hereto as Exhibit 25. In this letter, United recited the Air Force's numerous breaches of contractual obligations and demanded that the Air Force withdraw the termination for default letter or, in the alternative, convert it to a termination for convenience.

52. Over a month after United's November 1, 2001 letter, the Air Force's next response was on December 12, 2001. A true and correct copy of the December 12, 2001 response is attached hereto as Exhibit 26. In that letter, contracting officer Robert R. Kelley stated that the modular buildings had been disassembled, were being stored, and would be disposed of within 15 days of the letter if not contacted by United with disposition instructions. Mr. Kelley based this on that fact that at the same time the:

> "14 September 2001 modification P00002 was issued to contract F02604-00-F-A033 terminating the contract for default . . . the Government requested United Partition Systems dismantle and remove the modular building from Luke AFB within 30 calendar days following receipt of the Termination for Default."

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

The September 14, 2001 termination for default modification received by United gave no such request or instructions.

53. On December 18, 2001, United told Mr. Kelley that his December 12, 2001 letter was the first United learned of the request to dismantle and remove the modular building United had constructed on Luke AFB. A true and correct copy of the December 18, 2001 letter is attached hereto as Exhibit 27. In addition, United informed the Air Force that any attempts to dispose of the modular building would amount to destroying evidence resulting in possible legal consequences.

54. United is informed and believes that the Air Force representatives have altered or demolished the modular building destroying evidence material to the claims and preventing United from completing or verifying any alleged nonperformance, if any.

55. On December 20, 2001, the Air Force faxed a copy of a letter that allegedly was sent to United along with the September 14, 2001 letter to terminate the contract for default. A true and correct copy of the December 20, 2001 fax is attached hereto as Exhibit 28. This letter is also included as Tab 17 to the AF Rule 4 File. This was the first time United received notice of the Air Force's intention to have the modular buildings, which United nearly completed, dismantled and removed from Luke AFB.

56. United filed its formal claim to the Air Force on January 25, 2002. See Exhibit 4 attached hereto.

57. Since filing its claim on January 25, 2002, United has not received a final decision from the GSA contracting officer to date.

///

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

58. United realleges each and every allegation set forth in paragraphs 1 through 57 herein.

59. United and the Air Force entered into Contract No. F02604-00-F-A0334 on or about June 5, 2000.

60. United has substantially performed all conditions, covenants, and promises required by, and in accordance with, the terms and conditions of the contract, including providing 100% of materials and completing approximately 94% of the labor in designing, manufacturing, and constructing the modular buildings in accordance with Air Force approved plans and designs.

61. The remaining six percent of work to be completed consisted of (1) installing the HVAC systems (approximately $1,000.00 to complete); (2) installing the carpet (approximately $425.00 to complete); (3) removal of the three existing modular buildings (approximately $4,000.00 to complete); and (4) the punch list items and final clean up (approximately $350.00 to complete).

62. The remaining work:

a. did not impair the building or structure as a whole;

b. did not require great expenditure to do or cause damage to other parts of the structure when done;

c. did not amount to a defect running through the whole project so that the object of the owner in having it done in a particular way is defeated; or

d. was not so substantial that a deduction from the contract price for that work cannot sufficiently compensate the owner so he will then have essentially what he contracted for.

63. To the extent United was not able to complete performance, such incomplete performance is excusable by the Air Force breaching the contract by:

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

a. failing to remove the existing swamp coolers on site and, as a result, suspended United's performance;

b. failing to provide United access to install the HVAC units pursuant to the contract;

c. failing to make any payments to United for the work completed under the contract;

d. requiring United to provide Class A fire rated vinyl cladding for the walls when no contract provision or approved plan requires it;

e. failing to provide United with the necessary clarifying information for the performance of the contract;

f. failing to provide United access to the three existing modular buildings for United to perform its contractual obligations to remove such buildings; and

g. failing to adequately administer the contract.

64. At all times United was ready, willing, and able to perform any unperformed work within the scope of the contract.

65. The Air Force has wrongfully terminated the contract for default and although United has attempted to mitigate its damages, it has unavoidably incurred compensable damages.

66. United incurred added expense for additional site visits, and to demonstrate compliance with the contract standards for fire rating and electrical raceways beyond that contemplated by the contract.

67. To the extent the Air Force required Class "A" rated wall cladding, it was a change in the contract work and the Air Force breached its duty to direct such change in writing, providing the specifications for the wall cladding material and an adjustment in time and compensation. United had no duty to, and could not, proceed without the appropriate change order.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

68. United incurred costs, including added transportation, per diem, and delay expenses for its personnel and equipment of which no adjustment in time or compensation has been made by the Air Force.

**SECOND CAUSE OF ACTION**
**BREACH OF DUTY TO COOPERATE**

69. United realleges each and every allegation set forth in paragraphs 1 through 68 herein.

70. The Air Force has a duty not to impede, hinder, or interfere with United's performance of the contract.

71. The Air Force has impeded, hindered, or otherwise interfered with United's performance of the contract by:

a. failing to remove the existing swamp coolers on site which effectively suspended United's performance;

b. failing to provide United access to install the HVAC units pursuant to the contract;

c. failing to make any payments to United for the work completed under the contract;

d. requiring United to provide Class A fire rated vinyl cladding for the walls when no contract provision or approved plan requires it;

e. failing to provide United with the necessary clarifying information for the performance of the contract;

f. failing to provide United access to the three existing modular buildings for United to perform its contractual obligations to remove such buildings; and

g. failing to adequately administer the contract.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

72. As a result of the Air Force's failure to cooperate, United was not able to complete performance of the contract. The Air Force's actions were beyond the control of United.

73. The Air Force has wrongfully terminated the contract for default and although United has attempted to mitigate its damages, it has unavoidably incurred compensable damages.

## THIRD CAUSE OF ACTION
## TERMINATION FOR CONVENIENCE

74. United realleges each and every allegation set forth in paragraphs 1 through 73 herein.

75. If this Court determines that the Air Force has not breached its contract with United, the September 19, 2001 Termination for Default under FAR 52.249-8 should be converted to a termination for the convenience by the Air Force.

76. United is not in default under the contract because United has substantially performed all conditions, covenants, and promises required by, and in accordance with, the terms and conditions of the contract, including completing the design, manufacture, and construction of the modular buildings in accordance with Air Force approved plans and designs.

77. To the extent United was in default, such alleged default is excusable by the Air Force:

a. failing to remove the existing swamp coolers on site which effectively suspended United's performance;

b. failing to provide United access to install the HVAC units pursuant to the contract;

c. failing to make any payments to United for the work completed under the contract;

d. requiring United to provide Class A fire rated vinyl cladding for the walls

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

when no contract provision or approved plan requires it;

e. failing to provide United with the necessary clarifying information for the performance of the contract;

f. failing to provide United access to the three existing modular buildings for United to perform its contractual obligations to remove such buildings; and

g. failing to adequately administer the contract.

78. United is entitled to recover its costs of performance, continuing costs, settlement expenses, and a reasonable profit on the work it completed under the contract. Such damages will be determined according to proof at trial.

## PRAYER

WHEREFORE, United prays judgement against the Air Force on the First and Second Causes of Action as follows:

1. for the payment of the $108,404.00 less the reasonable amount of costs to complete performance;

2. for interest at the legal rate;

3. for prompt payment penalties;

4. for added expense for additional site visits;

5. for added expense to demonstrate compliance with the contract standards for fire rating and electrical raceways beyond that contemplated by the contract;

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

6. for per diem costs;

7. for delay expenses;

8. for attorneys fees under Equal Access to Justice Act; and

9. for such other and further relief as the Court deems proper.

WHEREFORE, United prays judgement against the Air Force on the Third Cause of Action as follows:

1. for costs of performance;

2. for continuing costs;

3. for settlement expenses;

4. for a reasonable profit on the work it completed under the contract;

5. for attorneys fees under Equal Access to Justice Act; and

6. for such other and further relief as the Court deems proper.

DATED: May 19, 2003

BEST BEST & KRIEGER LLP

By: ______________________
PAUL F. DAUER
Attorney for Plaintiff
United Partition Systems, Inc.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814