EXHIBIT "2"

**unitedpartition**

From: Kistler Jeffrey A SSgt 56 EMS/LGMFS <Jeffrey.Kistler@luke.af.mil>
To: <unitedpartition@msn.com>
Sent: Monday, March 20, 2000 2:30 PM
Attach: modular SOW3_17.doc; ONE-STORY-64-1.ppt
Subject: FW: solicitation F0260400BA006

<<modular SOW3_17.doc>> <<ONE-STORY-64-1.ppt>>

20 Mar 00

All Prospective FSS/MAS Schedule Holders of F0260400BA006, One-Story Modular Building

Attached is the Statement of Work for the above solicitation. Due to limited funds, we are asking offerors provide two separate quotes (one for entire building with electrical option A, and the second for building with electrical option B).

Desired delivery is to be made in 90 days ARO and is to be FOB Destination to 14171 W. Starfighter Street, Luke AFB AZ, BLDG 945.

Award is to be made to low offeror best demonstrating the ability to meet the desired delivery schedule along with satisfactory past performance. Please provide references for similar projects completed in the past two years.

Interior and Exterior finishes to be determined after award.

Please submit any questions in writing to jeffrey.kistler@luke.af.mil.

All proposals are to be submitted electronically, by 4pm 3 April 00, to jeffrey.kistler@luke.af.mil.

Point of Contact is Jeff Kistler (623) 856-7179 ext 237, fax (623) 856-3447

<<modular SOW3_17.doc>> <<ONE-STORY-64-1.ppt>>

3/21/00

EXHIBIT "3"

SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30

1. REQUISITION NUMBER: SEE SCHEDULE
PAGE 1 OF

2. CONTRACT NO.: F02604 00F0343 (partly cut off)
3. AWARD/EFFECTIVE DATE: 00 JUN 05
4. ORDER NUMBER: F02604 00FA033
5. SOLICITATION NUMBER:
6. SOLICITATION ISSUE DATE:

7. FOR SOLICITATION INFORMATION CALL: a. NAME
b. TELEPHONE NUMBER
8. OFFER DUE DATE/LOCAL TIME

9. ISSUED BY: F02604
CONTRACTING SQUADRON
14100 W EAGLE STREET
LUKE AFB AZ 85309-1217
TODD TETRAULT ACQUISITIONS 623 856-7179

10. THIS ACQUISITION IS
[ ] UNRESTRICTED
[ ] SET ASIDE 00000% FOR
[ ] SMALL BUSINESS
[ ] SMALL DISADV BUS
[ ] 8(A)
SIC:
SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
[ ] SEE SCHEDULE

12. DISCOUNT TERMS: .000 % 00 DAYS NET 30

[ ] 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING
14. METHOD OF SOLICITATION [ ] RFQ [ ] IFB [ ] RFP

15. DELIVER TO: F1SUSC
56 SUPS/LGSC
MARK FOR: F1SUSC F02604 00FA033
7171 W STARFIGHTER ST
LUKE AFB, AZ 85309

16. ADMINISTERED BY: FA4887
SEE BLOCK 9

17a. CONTRACTOR/OFFEROR CODE 4X005 FACILITY CODE
800-959-0878

UNITED PARTITION SYSTEMS,INC
2180 S.HELLMAN AVE
ONTARIO CA 91761-0977

18a. PAYMENT WILL BE MADE BY: F7580
EFT:
DFAS-DE
PO BOX 203003
DENVER, CO
80220

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED [ ] SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | SEE ATTACHED SCHEDULE(S)<br>ITEMS: 4<br>DELIVER TO FOB POINT BY: 00 JUL 31 | | | | |

25. ACCOUNTING AND APPROPRIATION DATA
03080 6429 170 000 845380 875800

26. TOTAL AWARD AMOUNT (for Govt. Use Only): 108404.00

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4, 52.212-3 and 52.212-5 ARE ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4.FAR 52.212-5 is attached ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ____ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

29. AWARD OF CONTRACT: REFERENCE 00BA034 [ ] OFFER DATED ____________. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)
[signature]

30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT)
30c. DATE SIGNED

31b. NAME OF CONTRACTING OFFICER (TYPE/PRINT): STANLEY D. JANDERS
31c. DATE SIGNED: 06-05-0

32a. QUANTITY IN COLUMN 21 HAS BEEN
RECEIVED [ ] INSPECTED [ ] ACCEPTED AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

33. SHIP NUMBER
[ ] PARTIAL [ ] FINAL
34. VOUCHER NUMBER
35. AMOUNT VERIFIED CORRECT FOR

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE
32c. DATE

36. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL
37. CHECK NUMBER
38. S/R ACCOUNT NUMBER
39. S/R VOUCHER NUMBER
40. PAID BY

42a. RECEIVED BY (PRINT)

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

42b. RECEIVED AT (LOCATION)

41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER
41c. DATE

42c. DATE REC'D YY/MM/DD
42d. TOTAL CONTAINERS

AUTHORIZED FOR LOCAL REPRODUCTION STANDARD FORM 1449(REV. 10-95) Prescribed by GSA-FAR (48CFR) 53.212

:TED PARTITION SYSTEMS,INC F0260400FA033 002.

| ITEM NO | SUPPLIES/SERVICES | | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 01 | 5450FMONEN | F15USC01450100 | 1 | EA | 73188.0000 | 73188.00 |

PRI: 09

BUILDING, MODULAR, 64' X 40' X 9'
4" SYSTEM CLASS A FIRE RATED TO INCLUDE
THE FOLLOWING:
312LF 9' HIGH WALL SECTIONS
5EA DOORS-STANDARD 3068
2EA MAN MADE DOORS W/WINDOW
2EA HEAVY-DUTY STEEL/ALUMINUM DOUBLE
SWING DOORS
8EA WINDOWS-STANDARD FIXED (DUAL PANED)
2560 SQFT STANDARD DROP CEILING
2560 SQFT ROOF DECK NON-LOAD BEARING
208 LF ROOF FASCIA
19 EA RACEWAYS:(6)SWITCHES/(13)DUPLEXES
STANDARD 110V
) EA T-8 ELECTRONIC LIGHT FIXTURES
-2'X4' (110V) W/LAMPS
2560 SQFT R-19 BATT INSULATION
32 EA CATEGORY 5 JACKS W/PHONE OUTLET
RJ45
14 LF COMMUNICATION ROOM W/VENTED DOOR
1280 SQFT CARPET TO INCLUDE INSTALLATION
4 EA DEDICATED CIRCUITS
(1) EXIT SIGN/(4) EMERGENCY LIGHTS
DUMPSTER RENTAL
HVAC CALCS SYTEM(7.5)TON 480 VOLT
SPRINKLER SYSTEM WITH CALCS (INCLUDES
PULL STATION,HORN AND STROBE)
TEAR DOWN EXISTING MODULAR SPACE-
3 TRAILERS/ 1 FORKLIFTABLE
PHONE/DATA CABINET
(1)150 AMP PANEL/
12 SPACE (1) 480 VOLT SUB PANEL
INSTALLATION
FREIGHT

| | | | | | | |
|---|---|---|---|---|---|---|
| 02 | 4120015TON | F15USC01450101 | 1 | EA | 7408.0000 | 7408.00 |

PRI: 09

OPTIONS TO INCLUDE:
2EA UPGRADE TO 5 TON CARRIER HVAC
PACKAGE UNITS(EXPERIENCED)
1EA ADDITIONAL DOOR W/WINDOW
2EA ADDITIONAL EXIT SIGNS
5EA ADDITIONAL DUAL PANED WINDOWS
2" CONDUIT RUN-TELEPHONE LINES(200')
4" CONDUIT RUN-DATA LINES (150')
4EA LARGE WINDOWS IN "IMPACT DOORS"

| | | | | | | |
|---|---|---|---|---|---|---|
| 03 | N0610150AMP | F15USC01450102 | 1 | EA | 15183.0000 | 15183.00 |

PRI: 09

ELECTRICAL HOOK-UP OPTION B
ALL WORK TO BE COMPLETED IAW DEVELOPED
STATEMENT OF WORK

| | | | | | | |
|---|---|---|---|---|---|---|
| 04 | N06101CABLE | F15USC01450103 | 1 | EA | 12625.0000 | 12625.00 |

PRI: 09

CABLE AND TELEPHONE RUNS TO INCLUDE:
200' RUN- 100 PR CABLE(CAT3) FOR
TELEPHONES RUN TO COM ROOM TERMINATED
AT JACKS
150' RUN-29 DUAL LAN DROPS (CAT 5)
TERMINATED AT JACKS
INCLUDES CERTIFICATION AND TESTING IAW
LUKE AFB COMMUNICATIONS WIRING STANDARDS
-ALL WORK TO BE PERFORMED IAW GOVERNMENT
STATEMENT OF WORK.
-ALL PRICES CONFIRMED W/QUOTE#7375RW/RW1
-1EA 64'X40'X9' MODULAR OFFICE:$73188.00
-ELECTRICAL HOOKUP OPTION B:$15,183.00
-OTHER OPTIONS:$7408.00
-CABLE AND TELEPHONE RUNS:$12625.00

( END PAGE )

EXHIBIT "4"

BEST BEST & KRIEGER LLP
A CALIFORNIA LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
LAWYERS
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814
(916) 325-4000
(916) 325-4010 FAX
BBKLAW.COM

RIVERSIDE
(909) 686-1450

INDIAN WELLS
(760) 568-2611

ONTARIO
(909) 989-8584

SAN DIEGO
(619) 525-1300

ORANGE COUNTY
(714) 939-5940

KEVIN T. COLLINS
FILE NO. 21017 00000

January 25, 2002

RECEIVED
JAN 28 2002

VIA FEDEX

Robert R. Kelley
Contracting Officer
Department of the Air Force
56th Contracting Squadron (AETC)
Luke AFB, AZ 85309

*Re: Contract F02604-00-F-4033 for Modular Building*

Dear Mr. Kelley:

Enclosed please find United Partition Systems, Inc.'s claim Pursuant to 41 U.S.C. section 605. As required by law, we request that the contracting officer issue a written decision on this claim within 60 days of receipt. Additionally, if you require any additional information or materials to completely and thoroughly analyze this claim, please do not hesitate to contact our office and we will ensure that you receive the requested information.

Sincerely,

Kevin T. Collins

KTC:dap

Enclosure

cc: Mike Kaminski

## CLAIM PURSUANT TO 41 U.S.C. §§ 601 et seq.

1. The following claim is submitted pursuant to 41 U.S.C. § 605 and represents Claimant United Partition Systems, Inc.'s ("UPS") claim concerning Contract No. F02604-00-F-A0334 for the design, manufacture and construction of modular buildings at Luke Air Force Base ("Luke AFB").

2. On or about June 5, 2000 UPS was awarded a contract for the design, manufacture and construction of modular buildings at Luke AFB in Arizona. The total contract sum was $108,404.00. Attached to this claim as Exhibit "A" is a true and correct copy of the contract.

3. Prior to the commencement of the design, manufacture and construction, and at the direction of Luke AFB, various modifications were made to the design of the modular buildings. After the implementation of the design changes requested by authorized Air Force personnel, UPS completed the design and construction drawings for the modular buildings to be constructed at Luke AFB. These drawings were approved and signed by Todd Tetrault, authorized representative, of Luke AFB on or about June 9, 2000. UPS immediately began manufacturing the modular buildings after the design was approved.

4. The manufacturing of the modular buildings was completed, and the buildings were shipped to Luke AFB, on July 28, 2000. On this same date, UPS transported personnel and resources from California to Luke AFB to begin the construction/installation process.

5. On or about August 17, 2000 UPS transported the Heating Ventilation Air Conditioning ("HVAC") units for the modular buildings to Luke AFB for the completion of the project. However, on or about August 18, 2000, Luke AFB did not know how they intended to proceed with regard to the removal of the existing swamp coolers and the installation of the new HVAC units. The removal of the existing swamp coolers was not within UPS's original scope of work under the contract. Brian Milam of Luke AFB directed the suspension of the installation work due to the lack of access to install the HVAC units, and UPS's crew ceased its work pursuant to that direction until further notice by Luke AFB on how to proceed with the swamp cooler issue.

6. Pursuant to the contract, Luke AFB was responsible for preparing the installation site, including removal of existing swamp coolers to permit UPS to install new HVAC units. Contracting Officer Brian Milam admitted that the contractor was not required to remove the swamp coolers and the coolers were not removed by military personnel as agreed by Captain Hammil, CE, nor did the CE provide direction on removal. Luke AFB failed to timely remove or arrange for removal of the swamp coolers to provide UPS with access to complete the installation required under the contract. This was contrary to law and the contract, for which UPS is entitled to an adjustment in time and compensation. As a result of suspension of the work, UPS incurred costs, including added transportation, per diem, and delay expenses for its personnel and equipment. No adjustment in time/or compensation has been made by Luke AFB which constitutes a material breach of contract.

7. On or about August 18, 2000, for the first time, and after approving the design drawings for the modular buildings. Brian Milam of Luke AFB requested data on the fire rating for wall systems used in the modular buildings. UPS responded immediately with documentation provided by its suppliers verifying use of Class A materials. UPS even provided invoices showing proof of purchase and supplier phone numbers for additional questions.

8. On or about August 23, 2000, UPS submitted a proposal for, among other things, removal of the existing swamp coolers so that it could proceed with the completion of the project. Attached to this claim as Exhibit "B" is a true and correct copy of UPS's proposal.

9. On or about September 11, 2000. UPS attempted to complete the project pursuant to the terms and conditions of the contract and the bid to remove the swamp coolers. As of this date, UPS had not received any payments on the contract. Accordingly, on or about September 19, 2000 UPS spoke with the contracting officer at Luke AFB and requested a partial payment on the contract based on materials and labor performed to that point in time. The contracting officer indicated that if UPS would send an invoice, he would process the request for payment.

10. On or about October 12, 2000, UPS had substantially performed all work required by the contract. The contracting officer for Luke AFB sent a letter on that date indicating that UPS had to complete punch list items before *final* payment could be made. No interim, progress or hardship payments had been made up to that time contrary to the representation of that contracting officer that such payments were forthcoming. From October 13 through December 5, 2000, Luke

AFB failed to provide UPS with a complete punch list of work to complete any of the alleged unresolved issues (*i.e.*, fire rating, raceways, HVAC system) or return any phone calls so that UPS could complete the project. Regardless, UPS did not request final payment. Only a progress payment until Luke AFB could resolve the problem with the HVAC system.

11. On or about December 6, 2000, UPS received a "Cure Notice" from Stanley D. Sanders, the then contracting officer of Luke AFB. The Cure Notice contended that the walls in the modular building were not "Class A fire rated" and did not have "UL approved raceway channels." Attached to this claim as Exhibit "C" is a true and correct copy of the Cure Notice.

12. Luke AFB's contended that the walls of the modular buildings at issue herein did not meet fire retardant standards as a result of the vinyl cladding. No contract provision or approved plan requires that cladding for walls, otherwise Class A fire rated, must independently or conjunctively have such a rating. All modular buildings on bases throughout the world have the same vinyl finish as the modular buildings installed by UPS at Luke AFB. UPS informed Luke AFB of this fact. Attached to this claim as Exhibit "D" is a true and correct copy to UPS's response to the Cure Notice. UPS incurred added expense beyond that contemplated by the contract for additional site visits and to demonstrate compliance with the contract standards for fire rating and electrical raceways.

13. On or about May 7, 2001, and again on or about May 9, 2001, Luke AFB, by and through Deputy Fire Chief Bernard Clemens, requested documentation showing that the vinyl used in the modular buildings was Class "A" fire rated. He further indicated that "[t]he vinyl issue is the only requirement needed to be resolved before work can continue." Again, UPS reiterated its position that there is no such thing as Class "A" vinyl. To the extent Luke AFB required Class "A" rated wall cladding, it was a change in the contract work and Luke AFB breached its duty to direct such change in writing, providing the specifications for the wall cladding material and an adjustment in time and compensation. UPS had no duty to, and could not, proceed without the appropriate change order.

14. On or about June 25, 2001 UPS received a "Show Cause Notice" from the contracting officer at Luke AFB indicating that the government was considering terminating the contract for UPS's alleged default.

15. UPS repeatedly requested clarification and direction in identifying the wall cladding materials which the USAF wanted. For example, by letters of July 5, 2001, August 1, 2001, and letter of May 9, 2001. In breach of its contractual duty, the USAF failed and refused to respond with clarifying information necessary for UPS to perform further work beyond that provided in the contract.

16. On or about July 12, 2001, UPS responded to the Show Cause Notice indicating that UPS's failure to complete Contract No. F02604-00-F-A0334 was due to the actions, or lack thereof, of Luke AFB. Additionally, UPS's response to the Show Cause Notice once again informed Luke AFB that UPS had paid for 100% of the materials and 90% of the labor associated with the contract and that it had received no payments on the contract. Attached to this claim as Exhibit "E" is a true and correct copy of UPS's response to the Show Cause Notice. At no time has Luke AFB disputed the adequacy of UPS's cure response.

17. Luke AFB changed contracting officers during the contract over eight times. This compounded the difficulty of any communication efforts on the part of UPS, and had a major effect on prolonging the performance of the contract. Moreover, through its many requests, UPS was unable to acquire a single statement of a possible solution from any of these eight different contracting officers.

18. UPS is informed and believes that Luke AFB representatives have altered or demolished the modular building destroying evidence material to the claims and preventing UPS from completing or verifying any *de minimus* performance, if any.

19. UPS has performed all conditions, covenants, and promises required by, and in accordance with, the terms and conditions of the contract, including completing the design, manufacture and construction of the modular buildings. Despite UPS's performance under the

contract, Luke Air Force Base has failed and refused, and continues to fail and to refuse, to pay the contract sum, in excess of $108,000.00, plus interest at the legal rate and any prompt payment penalties. Luke AFB has wrongfully terminated the contract for default and although UPS has attempted to mitigate its damages it has unavoidably incurred compensable damages. The Luke AFB wrongful termination should be treated as a termination for convenience and UPS is maintaining records of compensable expenses for such a termination, including the costs of preparing a termination claim and legal fees.

20. UPS respectfully submits this claim requesting the payment of the $108,000.00, plus interest at the legal rate and applicable prompt payment penalties. At such time as all expenses recoverable under a termination for convenience are known, UPS will supplement this claim.

21. Pursuant to 41 U.S.C. § 605(c)(2), UPS requests that the contracting officer issue a written decision on this claim within 60 days of receipt of this certified claim.

DATED: January 25, 2002

BEST BEST & KRIEGER LLP

By: ______________________
Kevin T. Collins
Attorneys for United Partitions Systems, Inc.

## CERTIFICATION

I certify that the claim set forth above is made is good faith; that the supporting data are accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the government's adjustment for which the contractor believes the government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

DATED: January 21, 2002

UNITED PARTITIONS SYSTEMS, INC.

By: ______________________

Mike Kaminski, Vice President of Operations

# EXHIBIT "A"

CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE
2431 | 00 JUN 05 | F0258400FA033

SOLICITATION / TION CALL | 8. NAME | 8. TELEPHONE NUMBER | 8. OFFER DUE DATE/LOCAL

ISSUED BY | F04887
CONTRACTING SQUADRON
SINGLE STREET
AZ 85309-1217
TETRAULT ACQUISITIONS 623 856-7179

10. THIS ACQUISITION IS [ ] UNRESTRICTED [ ] SET ASIDE 00000% FOR [ ] SMALL BUSINESS [ ] SMALL DISADV BUS [ ] 8(A)
SIC:
SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED [ ] SEE SCHEDULE
12. DISCOUNT TERMS .000 % 00 DAYS NET 30
13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING
14. METHOD OF SOLICITATION [ ] RFQ [ ] IFB [ ] RFP

DELIVER TO | F1SUSC
SUPS/LGSC
MARK FOR: F1SUSC F02604 00FA033
W STARFIGHTER ST.
AFB, AZ 85309

16. ADMINISTERED BY
SEE BLOCK 9

CONTRACTOR/OFFEROR CODE 4X758SU FACILITY CODE
800-959-0679

UNITED PARTITION SYSTEMS,INC
2180 S.HELLMAN AVE
ONTARIO CA 91761-8977

18a. PAYMENT WILL BE MADE BY
DFAS-DE
PO BOX 203003
DENVER, CO
80220

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED [ ] SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | SEE ATTACHED SCHEDULE(S) ITEMS: 4 | | | | |
| | DELIVER TO FOB POINT BY: 00 JUL 31 | | | | |

ACCOUNTING AND APPROPRIATION DATA
0 0429 170 800 045300 075800

26. TOTAL AWARD AMOUNT (For Govt. Use Only)
100404.00

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4, 52.212-3 and 52.212-5 ARE ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4.FAR 52.212-5 is attached ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ____ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

29. AWARD OF CONTRACT: REFERENCE [ ] OFFER DATED ______. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)

30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT) | 30c. DATE SIGNED

31b. NAME OF CONTRACTING OFFICER (TYPE/PRINT)
STANLEY D. SANDERS

31c. DATE SIGNED
06-05-

32a. QUANTITY IN COLUMN 21 HAS BEEN
[ ] RECEIVED [ ] INSPECTED [ ] ACCEPTED AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE | 32c. DATE

33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR
[ ] PARTIAL [ ] FINAL
36. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL | 37. CHECK NUMBER
38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY

42a. RECEIVED BY (PRINT)

CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT
SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE

42b. RECEIVED AT (LOCATION)

42c. DATE REC'D YY/MM/DD | 42d. TOTAL CONTAINERS

"A"

AUTHORIZED FOR LOCAL REPRODUCTION STANDARD FORM 1449 (REV. 10-95) Prescribed by GSA-FAR (48CFR) 53

# EXHIBIT "B"

UNITED PARTITION SYSTEMS, INC.
2180 Hellman Ave. • Ontario, California 91761 • (909) 947-1077 • Fax (909) 947-2675

QUOTATIC
#7535-

PLEASE USE THE ABOVE NUMBER WHEN ORDERING OR CORRESPONDING

Luke AFB
Fax:(623) 856-4170

Attention : Captain Smith / Mr. Kelly
Ref: Project # 9404

Quotation is subject to the conditions noted below

| | |
|---|---|
| Your Inquiry Date<br>August 23, 2000 | Salesman<br>Mike Kaminski |
| Date<br>August 23, 2000 | Quote Valid for<br>30 days |
| Proposed Shipping Date F.O.B.<br>3-5 Weeks Upon Receipt of Approved Drawings | |
| Ship Via<br>F.O.B. Plant | Prepaid / Collect |
| Terms<br>NET 30 | |

[CON]DITIONS: The prices and terms of this quotation are not subject to verbal or other [agre]ement unless approved in writing by the Home Office of United Partition Systems Inc. All quotations and agreements are contingent upon strikes, accidents, fires, availability of materials and all other causes beyond our control. Prices are based on costs and conditions existing on date of quotation and are subject to change by the seller before final acceptance. Typographical and stenographic errors subject to correction. Purchaser agrees to accept either overage shortage not in excess of ten (10%) percent to be charged for pro-rata. Purchaser assumes liability for patent and copyright infringement when goods are made to Purchaser's specifications. When quotation specifies material to be furnished by the Purchaser, ample allowance must be made for reasonable spoilage and material must be of suitable quantity to facilitate efficient production. No custom work is returnable and a twenty-five (25%) restocking charge will be levied on any standard material authorized for return. Conditions not specifically stated herein shall be governed by established trade customs. Terms inconsistent with those stated herein which may appear on Purchaser's formal order will not be binding to the seller.

## CHANGE ORDER

| Quantity | Description | Amount |
|---|---|---|
| (6) | EACH ADDITIONAL DEDICATED CIRCUITS | $ 450.00 |
| | INCREASE SIZE OF LOAD CENTER TO 20 SPACES | $ 212.00 |
| | 3' X 3' X 3' U - SHAPED GUARDRAIL ( MATERIAL, SHIPPING, & INSTALLATION ) | $ 1,270.00 |
| | SWAMP COOLER - DISCONNECT POWER & DUCT WORK ( GOVERNMENT TO REMOVE & DISPOSE OF ) * USE EXISTING PAD & OPENING FOR NEW HVAC UNIT | $ 375.00 EA. |
| | IDENTIFY EXCISTING LAN LINES IN EXISTING PANEL REMOVE AND REPLACE SPECIFIC WITH NEW LINES | $ 2,160.00 |

[Pl]ease note: Unless otherwise specified, engineering, permits, drawings, freight or tax is not included. All installation prices pending area being free [o]f any and all obstructions. If an additional trip is required, a minimum charge of $500.00 will apply. Lift Equipment, sprinklers, main electrical hook-[u]p by others. Handicapped hardware by others. Window Cleaning By Others.

[A]CCEPTANCE OF PROPOSAL - The above prices, specifications [a]nd conditions are satisfactory and are hereby accepted. You are [a]uthorized to do the work as specified. Payment will made as [o]utlined above.

A liquidated damage charge of one and one half (1 1/2%) [perce]nt per month (18% annual rate), or the highest rate allowed [by la]w, will be charged on the amount not paid by the end of the [month] following purchase.

[Buyer] shall pay collection costs of overdue accounts including [r]easonable attorney's fees.

All credit card purchases will have a 3% surcharge to the [a]bove quoted prices.

Signature: [signature] Date: 08-23-2000
Mike Kaminski

Signature: ______________________ Date:

EXHIBIT "C"

RECEIVED

28 November, 2000

MEMORANDUM FOR: UNITED PARTITION SYSTEMS, INC.
2180 S. HELLMAN AVE.
ONTARIO, CA 91761-0977

FROM: 56TH CONTRACTING SQUADRON
14100 W. EAGLE ST.
LUKE AFB, AZ 85309-1212

SUBJECT: Cure Notice, Contract F02604-00-FA033

1. You are notified that the Government considers your failure to comply with the material requirements established in the statement of work a condition that is endangering performance of the contract. Specifically, the statement of work states that the wall system used for this project shall be "class A fire rated and UL approved". To date, you have not provided adequate evidence to support your claim that the wall system currently being used meets required standards outlined in the statement of work. The data that you have supplied addresses the individual components of the wall system, but does not illustrate a "class A fire rating" for the entire wall system, as assembled. In addition, you have failed to comply with the requirement to provide "UL approved raceway channels" as required by the statement of work. You are reminded that in accordance with FAR 52.236-7, *Permits and Responsibilities* contained in your GSA contract number GS07F0343J, "the contractor is responsible for all materials delivered and work performed until completion and acceptance of the entire work". You are also reminded that in accordance with FAR 52.246-12, *Inspection of Construction* contained in your contract, "if the Government decides to examine already completed work by removing it or tearing it out, the Contractor, on request, shall promptly furnish all necessary facilities, labor, and material". Therefore, unless the conditions explained above are cured within 30 days after receipt of this notice, the Government may terminate for default under the terms and conditions of this contract.

2. If you have any questions related to this cure notice, please call SSgt. Steve Munnell at (623) 856-7179 ext. 268.

STANLEY D. JANDERS, GS-11, USAF
Contracting Officer

# EXHIBIT "D"

UNITED PARTITION SYSTEMS, INC.
2130 Hellman Ave. • Ontario, California 91761 • (909) 947-1077 • Fax (909) 947-2675

FAXED

January 11, 2001

56[TH] Contracting Squadron
14100 West Eagle Street
Luke AFB, AZ 85309-1212

Attention: Stanley D. Janders

Reference: Cure Notice, Contract F02604-00-FA033

Dear Stanley,

This is being written in response to your letter on November 28, 2000. In response please note the following:

1). Class A Fire Rating for United Partition walls.

A). Our original project for this contract was designed to utilize gypsum board as your substaight on both sides of the sandwich panel, which was changed by Luke AFB to be 1/8" hardboard substraight on both sides. This is even acknowledged in your own letter. All of our relevant data for this panel has been forwarded to Luke AFB.

B). United has provided you with information on each component which is all Class "A". It would be an oxymoron to present that all Class "A" components provided together would provide you with an end result of less than Class "A" Rating. In doing so, we have provided you with all information you have requested.

C). Also, you should recall from our site visit, that we had never heard of "UL" being associated with non-electrical components. We openly expressed that there was not a UL approval on our panel, and this was not an issue for anyone.

UNITED PARTITION SYSTEMS, INC.
2180 Hellman Ave. • Ontario, California 91761 • (909) 947-1077 • Fax (909) 947-2675

("P")

2). UL approval for raceways.

A). Once again, we told everyone (yourself included) on our site visit (which I also might add was not a part of the contract) that we were unaware of any UL approval existing on a raceway in our industry. Thus, we did not have a UL approval, and this was not an issue for anyone.

B). Regardless, your base civil engineer said he would accept our raceway without the UL listing if we utilized UL electrical conduit to house wires within our raceway. Due to this, we felt that the raceway issue was resolved.

C). As a side note, we have however contacted Underwriter Laboratories and applied for listing back in October. Our approval and report is promised by February.

Please note that interest is accruing on your severely past due account with our firm. We were promised payment for our 95% completion two months ago, after which we would schedule your project for completion.

If you should have any further questions, please feel free to contact me.

Respectfully Submitted,
United Partition Systems Inc.

Mike Kaminski

EXHIBIT "E"

UNITED PARTITION SYSTEMS, INC.

July 12, 2001

56th Contracting Squadron
14100 W. Eagle St.
Luke AFB, AZ. 85309-1212

Reference: Show Cause Notice Contract # FO2604 – 00 – FA033

Dear Sirs,

The reason for the non- completion of contract # F02604 – 00 – FA003 is solely due to the actions, or lack there of, on the part of Luke AFB.
Luke AFB personnel, prior to the start of work, approved all materials and design by United Partition Systems during an on- site meeting held with 12-15 people in attendance. Since the contract award date of 5 June 2000, Luke AFB has changed contract administrators eight times. Each time there has been a change, weeks have been lost due to their lack of knowledge of the contract and previous discussions. United Partition has provided the same information numerous times on a number of issues in efforts to complete the contract. Unfortunately, these efforts have gone in vain due to actions by Luke AFB.
Luke AFB halted completion of this project on 18 Aug 2000 when they sent our installers home. The HVAC system was set for completion that week, but Luke AFB had to resolve issues with respect to existing swamp coolers. To this date United Partition has not received any word to return and complete the project. We have endured many unnecessary delays due to lack of performance on behalf of Luke AFB.
We have paid for 100% of the materials and 90% of the labor associated with this contract, much of which we do not manufacture. We were told back in September that a progress payment would be made while Luke AFB could work out coordination of activities on their end. To this date, no payment has been made. United Partition has done everything possible to complete this project, while Luke AFB continues to push it aside and pass it over to another contracting officer.

Respectfully,

Mike Kaminski
United Partition Systems, Inc.

2180 Hellman Ave. • Ontario, California 91761 • (909) 947-1077 • Fax (909) 947-2675

EXHIBIT "5"

DEPARTMENT OF THE AIR FORCE
AIR EDUCATION AND TRAINING COMMAND

20 MARCH 2002

MEMORANDUM FOR UNITED PARTITION SYSTEMS, INC.
2180 S. HELLMAN AVE
ONTARIO, CA 91761-0977
ATTN: MR. MIKE KAMINSKI

RECEIVED
MAR 25 2002
BEST BEST & KRIEGER
SACRAMENTO

FROM: 56[th] Contracting Squadron/LGCA
14100 West Eagle Street
Luke AFB, AZ 85309-1217

SUBJECT: United Partition Systems, Inc. Claim under Contract F02604-01-F-A033, Modular Building, Base Supply, Luke AFB AZ, Received 28 Jan 02

1. This is not a Contracting Officer's Final Decision.

2. In accordance with FAR 33.211 (c)(2) we are to either issue a final decision or notify you, by certified mail, within 60 calendar days of receipt of a certified claim, when a final decision will be issued. The government received your certified claim on 28 Jan 02. The Government will not be able to issue a final decision within this time frame. Due to the nature of your claim and the dollar value involve the final decision must comply with AFFARS 5333.211 which states "the contracting officer shall refer proposed final decisions, with a complete contract file, to AFMC LO/JAB, Wright-Patterson AFB, OH for review before sending the decision to the contractor." Therefore, the Government expects to issue a final decision on or before 30 Apr 02.

3. If you have any questions you may contact me at (623) 856-7179 ext 268.

KENNETH J. BARBORAK
Contracting Officer

# EXHIBIT "6"

# DEPARTMENT OF THE AIR FORCE
AIR EDUCATION AND TRAINING COMMAND

23 APRIL 2002

MEMORANDUM FOR UNITED PARTITION SYSTEMS, INC.
2180 S. HELLMAN AVE
ONTARIO, CA 91761-0977
ATTN: MR. MIKE KAMINSKI

FROM: 56th Contracting Squadron/LGCA
14100 West Eagle Street
Luke AFB, AZ 85309-1217

SUBJECT: United Partition Systems, Inc. Claim under Contract F02604-01-F-A033, Modular Building, Base Supply, Luke AFB AZ, Received 28 Jan 02

1. This is not a Contracting Officer's Final Decision.

2. By certified letter, dated 20 March 02, we notified you there would be a delay in issuing a Contracting Officer's Final Decision. The Government had expected to issue the final decision on or before 30 April 02, however, we will not be able to issue the decision within this time frame. AFFARS 5333.211 states "the contracting officer shall refer proposed final decisions, with a complete contract file, to AFMC LO/JAB, Wright-Patterson AFB, OH for review before sending the decision to the contractor." The attorney assigned to review the final decision has been out due to surgery resulting in a further delay. Therefore, the Government now expects to issue a final decision on or before 30 May 02.

3. If you have any questions you may contact me at (623) 856-7179 ext 268.

KENNETH J. BARBORAK
Contracting Officer

# EXHIBIT "7"

**DEPARTMENT OF THE AIR FORCE**
AIR EDUCATION AND TRAINING COMMAND

20 May 2002

MEMORANDUM FOR UNITED PARTITION SYSTEMS, INC.
2180 S. HELLMAN AVE.
ONTARIO, CA 91761-0977

FROM: 56th Contracting Squadron/LGCB
14100 West Eagle Street
Luke AFB, AZ 85309-1217

SUBJECT: Contracting Officer's Final Decision and Payment Demand -- Delivery Order F02604-00-F-A033 Modular Facility at Luke AFB AZ

1. DESCRIPTION: Your claim in the amount of $108,000.00 for wrongful termination of delivery order F02604-00-F-A033 is denied in its entirety. This letter also serves as a demand for payment in accordance with Federal Acquistion Regulation (FAR) 32.610 for excess reprocurement costs in the amount of $10,987.50.

2. On 5 June 2000 Delivery Order F02604-00-F-A033 was awarded under General Services Administration contract GS-07F-0343J for the design, manufacture and installation of a modular facility in Building 945 at Luke AFB, Arizona. Paragraph 1 of the Statement of Work (SOW) states "The modular building walls shall be 4" minimum thickness 9' high and shall be Class-A fire rated and shall be UL Approved." Further, paragraph 3 of the SOW states "Light switches for each room shall be factory installed near every interior doorway in UL Approved raceway channels with 12-gauge copper wire and 4-square junction box installed and mounted per UL reports."

3. After a number of requests, your company failed to provide supporting documentation that the requirements of the SOW as described above were met. On 28 November 2000 a Cure Notice was issued, in accordance with FAR 49.402-3(d), specifically citing your failure to provide adequate evidence to support your claim that the wall system met the requirement outlined in the SOW. In addition, the Cure Notice cited your failure to comply with the requirement that the raceways be UL Approved. Your response, dated 11 January 2001, failed to satisfactorily address the issues identified in the Cure Notice. In a letter, dated 9 May 2001, you were informed that if documentation could be provided showing the vinyl was "Class-A" rated; the UL Approval would not be an issue. On 25 June 2001, a Show Cause Notice was issued in accordance with FAR 49.607 as a result of your failure to cure the conditions as described in the Government's letter of 9 May 2001 and the Cure Notice dated 28 November 2001. On 20 August 2001 you were notified that your contract was terminated for default. This notice detailed at length, gross and numerous defects in the modular facility which were so serious and pervasive as to render none of the structure or its components acceptable. The notice of termination also allowed you 30 days to dismantle and remove your materials from the site. Instead of dismantling and removing your materials you chose to leave them at Luke AFB which required the Government to dismantle and store your noncompliant modular facility.

4. As a result of your failure to complete delivery order F02604-00-A033 and provide a modular facility in compliance with the SOW, new delivery orders were issued to new firms. These new delivery orders included the removal of the noncompliant facility you provided and the removal of three existing modular buildings referred to in Paragraph 17 of the SOW. The amount the Government paid to have your noncompliant facility removed was $3,000.00 and $7,987.50 to remove the three existing modular buildings.

5. I hereby demand that United Partition Systems, Inc. make payment in the amount of $10,987.50 to the United States Government. Any amount not paid within 30 days from the date of this demand will bear interest at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41. You may submit a proposal for deferment of collection if immediate payment is not practicable or if the amount is disputed.

6. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals (Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208) and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number (F02604-00-F-A033). With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims under $50,000.00 or less or its accelerated procedure for claims of $100,000.00 or less. Instead of appeal to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Kenneth J Barborak

KENNETH J. BARBORAK
Contracting Officer

Cc: Best Best & Krieger LLP

# EXHIBIT "8"




JUN-05-00 MON 12:47 PM UNITED PARTITION SYSTEMS FAX NO. 909 941 2615 P. 01
CONTRACTING SQUADRON FAX NO. 6238563447 P. 02

# FACSIMILE ELECTRO MAIL TRANSMITTAL

*(This information collection is not subject to OMB review under PL-96, The Paperwork Reduction Act.)*

**WARNING!! - DO NOT TRANSMIT CLASSIFIED INFORMATION OVER UNSECURED TELECOMMUNICATIONS SYSTEMS. OFFICIAL DOD TELECOMMUNICATIONS SYSTEMS ARE SUBJECT TO MONITORING AND USE OF DOD TELECOMMUNICATIONS SYSTEMS CONSTITUTES CONSENT TO MONITORING.**

SECTION I - TO BE COMPLETED BY ORIGINATOR

| CLASSIFICATION | TRANSMISSION | |
|---|---|---|
| OFFICIAL USE / FOR OFFICIAL USE ONLY | ☐ IMMEDIATE ☒ ROUTINE | PAGE 1 OF 2 PAGES |

| TO (Office Symbol, Point of Contact, and Address) | FAX NO. DSN | FAX NO. COMMERCIAL |
|---|---|---|
| United Partition Systems, Inc. ATTN: Mike Kaminski | | (909)447-2675 |
| ELECTRONIC MAIL ADDRESS (E-Mail) | VOICE NO. DSN | VOICE NO. COMMERCIAL |
| | | |

SUBJECT

~~Dost. #737~~ Drawing for Modular Bld Delivery Order #F02604-00FA033

| FROM (Office Symbol, Point of Contact, and Address) | FAX NO. DSN | FAX NO. COMMERCIAL |
|---|---|---|
| Todd Tetrault 56 CONS/LGCU | | (623)856-3057,3447 |
| ELECTRONIC MAIL ADDRESS (E-Mail) | VOICE NO. DSN | VOICE NO. COMMERCIAL |
| todd.tetrault@luke.af.mil | | (623)856-7179 x234 |

REMARKS

| RELEASER'S SIGNATURE | DATE | TIME |
|---|---|---|
| | 9 Jun 03 | 1055 |

SECTION II - TO BE COMPLETED BY ELECTRO MAIL OPERATOR

| DATE TRANSMITTED | TIME TRANSMITTED | TRANSMITTER'S SIGNATURE |
|---|---|---|
| | | |
| DATE ADDRESSEE CONTACTED | TIME ADDRESSEE CONTACTED | CONTACTOR'S SIGNATURE |
| | | |

EXHIBIT "9"

# STATEMENT OF WORK
## Building 945

**Installation of one, one-story modular building with the following dimensions of approximately 64' x 40' x 9' high.**

1. Modular building shall consist of three offices and one large section located 4' from the existing warehouse exterior wall. The modular building walls shall be 4" minimum thickness 9' high and shall be Class-A fire rated and shall be UL Approved; color to be selected upon award. Floor shall be the existing concrete floor in the building's large section, except the three office areas which shall be carpeted; color to be selected upon award.

2. The ceilings shall be suspended from the roof deck and supported by the wall perimeter or in accordance with the manufacture's standard installation procedures. The suspended ceiling shall consist of white enameled T- bar ceiling grid, hung from hanger tabs and 12-gauge wires, white vinyl-faced fiberglass or mineral fiber tiles with a random issued finish. The ceiling panels shall be 2'-wide by 4'-long with a minimum of 5/8" thick lay-in acoustical panels or equivalent. The ceiling structure shall meet UL Class-A fire rating with 0-25 flame spread. A 6" fiberglass, unfaced, batt insulation, with at least an R-19 insulation factor, shall be installed above the ceiling panels. The T-bar ceiling grid shall provide support for the light fixtures and shall be supported at each corner of each light fixture.

4. Lights switches for each room shall be factory installed near every interior doorway in UL Approved raceway channels with 12- gauge copper wire and 4-square junction box installed and mounted per UL reports. 110-V dual outlets factory installed in UL Approved raceway channels with 12- gauge copper wire and 4-square junction box installed and mounted per UL reports. Outlet locations are to be installed at locations indicated in drawing. Modular wiring is not acceptable, use 99NFPA70 specs.

COMMUNICATIONS

5. Category 5, gang box (4 female receptacles) data and voice jacks installed at locations indicated in the drawing. All gang boxes interconnected with UL Approved conduit/raceway channels leading into the communications cabinet. One 49 square foot communications room, as indicated in the drawing, with one outward swinging, 7' x 3' vented door, to house a 100 pair telephone cable drop and LAN equipment. Walls of the closet shall be 9" high and built to the same specifications in paragraph 1. Closet shall have ceilings and lights as described in paragraph 2.

WINDOWS

6. Building windows shall be approximately 46" x 40", tempered glass, dual paned with no windowsills. There shall be approximately 8 wall windows and 6 door windows. Windows shall be located as noted in drawing.

GLASS

7. Tempered glass shall conform to FS DD-G-1403 and UBC section 2406. Interior glass shall be single pane min 3/16" clear tempered glass on all sliding and fixed windows. Exterior glass shall be dual-pane min 3/16" clear tempered safety glass with 3-1/2" air gap in center. Door glass shall be min 3/16" clear tempered safety glass.

DOORS

8. There shall be a heavy-duty steel/aluminum, swinging double doors, with windows on the upper halves of each door, on each side of the building. Doors shall be spring loaded, swing inward and outward, and be located as noted in drawings. Two 7' x 3' single, inward swinging doors with doorknob hardware and

windows in the upper halves. Doors shall be located on one side of the modular building as indicated in the drawings.

LIGHTING

9. Light fixtures shall be recessed in the ceiling. The lay-in light fixtures shall be 2'-wide by 4'-long and incorporate T8 4100k lamps with electronic ballasts. Light fixtures shall have a minimum 128-watt capacity and be equipped with diffuser lens and lamps. The appropriate quantity of light fixtures shall be located in the ceiling such that a minimum of 80-foot candle lighting at a height of 3-feet from the floor is evenly maintained throughout the modular. Modular wiring is not acceptable.

10. Emergency lights shall be provided and installed in each office and one large section and shall be powered by a separate circuit. Emergency lights will require battery backup. Modular wiring is not acceptable.

11. Illuminated exit signs shall be provided and installed and shall be powered by a separate circuit. LED only battery backup. Modular wiring is not acceptable.

FIRE SUPRESSION

12. A fire suppression system shall be installed into modular. The installation shall meet the requirements of NFPA 13-91. The system shall be standard wet pipe system with closed sprinkler heads having compatible piping and sprinkler heads as the existing system. The contractor shall provide a plan for connection to the existing fire suppression system beginning at closest facility riser. Contractor shall perform a test on the existing riser to determine flow and pressure characteristics. Contractor shall install the piping above the support pipe hangars with only the sprinkler heads protruding through the ceiling panels. HYDRO calculations shall be submitted prior to the installation and approved by the Contracting Officer, base Fire Department, and Utilities Planner. NFPA 13 & 25 should be referenced during installation and testing.

13. Contractor shall remove existing fire suppression system in 4 modular buildings to be demolished and removed. Contractor shall coordinate removal of fire suppression equipment with base Civil Engineering (CE) and Fire Department in accordance with local and base standards.

14. Contractor shall install a pull station, strobe light, and horn, and shall be required to tie new system into existing facility fire suppression system. Contractor shall coordinate with base CE and Fire Department when installing pull station, strobe, and horn.

HVAC

15. Central HVAC shall be provided and installed. Contractor shall supply and install all necessary components to provide turnkey operation. A mean interior temperature of 75° +/- 5° shall be required for proposed structure.

PLACEMENT

All lead calculations shall be submitted and verified prior to installation. Contractor shall coordinate with base CE for installation and placement of condensing unit. HVAC air handling unit shall be installed on roof of modular; all necessary structural supports, duct work, vents, and air flow regulation units shall be provided and installed by contractor. A condensation drain shall be connected and terminate outside the warehouse. Under no circumstances shall any exhaust air be allowed to vent into main warehouse. Excursion plates shall be provided for all. All penetrations in existing warehouse wall shall be sealed and free of all water leaks, and framed IAW all local and Air Force mechanical/structural codes. All plans to penetrate warehouse walls require prior approval by the Base Civil Engineering Squadron.

## REMOVAL OF EXISTING MODULAR BUILDINGS

17. Three existing modular offices shall be demolished and removed by the contractor. The single-room modular building on south side of warehouse near the receiving dock shall be removed first before constructing the new modular building.

### Warranty

All materials and workmanship shall be guaranteed to be free of defects for 1 full year.

# MECHANICAL

## EQUIPMENT

Contractor to provide two (2) HVAC units with Electric Heat sized for the Modular Building. Units to be a minimum of 5 ton unless load calculations indicate otherwise. Condensing units to be located outside the exterior warehouse walls.
Units to be supplied with all controls including Low temperature/High pressure cut off, AirFlow switch, Thermostat, and other controls required for unit operation.
Duct Heater to be integral with operation of unit.
Ductwork to be sized in accordance with SMACNA standards.
Contractor to provide refrigerant line sizing and load calculations.

## WARRANTY

All materials and workmanship shall be guaranteed free from defects for one full year.
Compressors, Compressor motor, coil, and fan motor shall be warranted for 5 years.

## ELECTRICAL (Option A)

### MODULAR BUILDING

All electrical components (light switches, lights, etc.) shall be pre-wired to a 120/208-V, 150-amp distribution panel. Panel to be located within the modular unit. All components shall conform to 1999 N.E.C., requirements, E.S.C. requirements and ML Handbook 1190. Electrical components shall be designed to meet the most stringent of the codes.

### HVAC EQUIPMENT

All HVAC equipment shall be 480-volt. A separate service disconnect will be provided for both the fan coil unit and condensing unit. Disconnects will be located within 5-feet of the unit. Condensing unit disconnect will be suitable for outdoor service.

### POWER

480-volt power will be fed from existing panel "H".
120/208-volt power will be fed from existing panel "M".
Contractor is responsible for running conduit and wiring from existing panels to new panels and then to equipment.
All wiring and conduit will be sized in accordance with the 1999 N.E.C. code and NL Handbook 1190.
Contractor is responsible for balancing loads on existing panels.

### GENERAL

- Use only metal junction boxes
- All wiring shall be copper
- No Romex wiring allowed
- Provide 3 dedicated circuits for the large section
- Provide a dedicated circuit for the copy machine
- All exit signs must be Light Emitting Diode (LED)
- All fluorescent lights must be T-8 with electronic ballast

### WARRANTY

All materials and workmanship shall be guaranteed free from defects for 1 full year.

## ELECTRICAL (Option B)

### MODULAR BUILDING/HVAC EQUIPMENT

All Electrical components shall be 277/480 volt except receptacles which shall be 120/208. All components shall be pre-wired from a new 150 amp distribution panel supplied with the building. Panel to be located within the Modular building. Receptacles will be fed from the new panel through a 277/480 to 120/208 step down transformer. Transformer to be located at the panel.
All components shall conform to 1999 N.E.C. requirement, E.S.C. requirements and MI Handbook 1190. Components shall be designed to meet the most stringent of the codes.

### POWER

480 volt power will be fed from existing panel 'H'
Contractor is responsible for running conduit and wiring from existing panel to new panel and then to equipment
All Wiring and conduit will be sized in accordance with 1999 N.E.C. code and ML Handbook 1190.
Contractor is responsible for balancing loads on existing panels.

### GENERAL

- Use only metal junction boxes
- All wiring shall be copper
- No Romex wiring allowed
- Provide a dedicated circuits for large section
- Provide 3 dedicated circuits for the copy machine
- All exit signs must be Light Emitting Diode (LED)
- All fluorescent lights must be T-8 with electronic ballast

### WARRANTY

All material and workmanship shall be guarantee free from defects for one full year.

EXHIBIT "10"

Capt. Smith
Lt. McClane

Memo for Record
Bldg. 945 Modular Building
August 18, 2000

The following issues related to this project remain unresolved. A meeting has been tentatively scheduled for Tuesday (22 Aug) to resolve these issues via tele-conference with the contractor. Personnel needed to attend this meeting are as follows: Mr. Meyer (CE Elec. Inspector), Mr. Smith (Fire Chief), Capt. Hamill (CE), Mr. Kelley (Contracting Officer), and SSgt. Milam (Contract Administrator).

Research

1. Mr. Meyer has stated that the contractor has not proven that the raceways being used are UL approved/listed, as required by the SOW. The contractor contends that a UL approved/listed raceway does exist within the modular industry. Mr. Meyer has stated that the raceways may be approved for use under this contract as long as certain modifications are made.

OK

2. The planned location of the electrical transformer may not be within code. The transformer has been permanently fastened to the floor in this location, however the hard wiring already in place points to this location. Supply/CE has stated that the location presents a code violation due to it's close proximity to the loading door. The contractor stated that they were directed to put the transformer in that location by Mr. Meyer on the first day of construction. Mr. Meyer stated that he has never directed the contractor to put the transformer in any specific location.

3. Mr. Meyer has stated that the electrical panel on site is not acceptable under code for its proposed use. Apparently, the issue is related to the use of a surface mounted vs. flush mounted panel in that location. There is also a concern that the panel may not be the proper size and capacity for it's proposed use. The HVAC sub-contractor, Mr. Stragg, has stated that the panel on site is within code for it's proposed use.

Flush

4. Supply/CE has requested drawings of the job site to identify planned/proposed locations of electrical and HVAC materials to include associated conduit runs. The contractor was not required to provide these drawings under the SOW. Mr. Kaminski of United Partitions stated that standard practice is for their sub-contractors to survey the work conditions once on site. The HVAC contractor provided his own drawings on Friday, Aug 18. At this time, no CE HVAC personnel are available to review these drawings. No drawings or illustrated specifications were provided to the contractor by the Government.

Also see #2

(623) 856-7421 Between 1-3

5. The Fire Dept., Mr. Smith, has expressed concerns that the wall system of the modular structure does not meet fire code. He is apparently concerned that the interior of the wall system may be highly flammable, and that the exterior of the wall is not fire resistant. In addition, the 4" system only measures 3 ½". The contractor stated that the system provided is indeed a 4" wall system, and that this is only a nominal figure much like a 2" by 4" in wood construction. In addition, the contractor contends that the surface wall materials used were "hand-picked" by Government personnel during a site visit that occurred prior to contract award.

Send P.O.

6. A government owned fire alarm/light exists on a hangar support pole which the modular structure has been built around. The unit's location conflicts with the required location of the ceiling tiles. The Fire Dept. must make a determination on where the unit is to be re-located. Mr. Smith will not return until Tues. August 22.

AUG-22-2000 TUE 01:17 PM 58 CONTRACTING SQUADRON FAX NO. 6238563447 P. 01

Received 08-18-02 04:39pm From- To-BB&K Page 019

7. The sprinkler sub-contractor has provided drawings to Contracting for coordination with the Fire. Dept. Mr. Smith is the only authority on base to approve these drawings. Due to his absence, the drawings remain at Contracting.

Also see #4 (Gov't Hold Ac)

8. The HVAC sub-contractor arrived on Thursday, Aug 17 to begin work on this project. The contractor plans to place the two 5-ton HVAC units either beside the existing inoperable swamp coolers or on the same pads as the swamp coolers if removed. The contractor is not required to remove the swamp coolers under this contract. However, CE has expressed concerns that the HVAC units cannot be placed beside the swamp coolers due to regulations. Capt. Hammill, CE, agreed that the swamp coolers could be removed by military personnel during a meeting on Tuesday, Aug 15. Nothing has been done to date, and no direction has been provided by CE HVAC personnel.

[signature]
SSgt. Brian Milam
Contract Administrator

EXHIBIT "11"

UNITED PARTITION SYSTEMS, INC.
80 Hellman Ave. • Ontario, California 91761 • (909) 947-1077 • Fax (909) 947-2675

QUOTATIC
#7535-

PLEASE USE THE ABOVE NUMBER WHEN ORDERING OR CORRESPONDING

Luke AFB
Fax:(623) 856-4170

Attention : Captain Smith / Mr. Kelly
Ref: Project # 9404

**Quotation is subject to the conditions noted below**

| Your Inquiry Date | Salesman | |
|---|---|---|
| August 23, 2000 | Mike Kaminski | |
| Date: August 23, 2000 | Quote Valid for: 30 days | |
| Proposed Shipping Date F.O.B.: 3-5 Weeks Upon Receipt of Approved Drawings | | |
| Ship Via: F.O.B. Plant | Prepaid | Collect |
| Terms: NET 30 | | |

CONDITIONS: The prices and terms of this quotation are not subject to verbal or other agreements unless approved in writing by the Home Office of United Partition Systems Inc. All ...ions and agreements are contingent upon strikes, accidents, fires, availability of mate... and all other causes beyond our control. Prices are based on costs and conditions existing on date of quotation and are subject to change by the seller before final acceptance. Typographical and stenographic errors subject to correction. Purchaser agrees to accept either overage shortage not in excess of ten (10%) percent to be charged for pro-rata. Purchaser assumes liability for patent and copyright infringement when goods are made to Purchaser's specifications. When quotation specifies material to be furnished by the Purchaser, ample allowance must be made for reasonable spoilage and material must be of suitable quantity to facilitate efficient production. No custom work is returnable and a twenty-five (25%) restocking charge will be levied on any standard material authorized for return. Conditions not specifically stated herein shall be governed by established trade customs. Terms inconsistent with those stated herein which may appear on Purchaser's formal order will not be binding to the seller.

## CHANGE ORDER

| Quantity | Description | Amount |
|---|---|---|
| | (6) EACH ADDITIONAL DEDICATED CIRCUITS | $ 450.00 |
| | INCREASE SIZE OF LOAD CENTER TO 20 SPACES | $ 212.00 |
| | 3' X 3' X 3' U - SHAPED GUARDRAIL ( MATERIAL, SHIPPING, & INSTALLATION ) | $ 1,270.00 |
| | SWAMP COOLER - DISCONNECT POWER & DUCT WORK ( GOVERNMENT TO REMOVE & DISPOSE OF ) * USE EXISTING PAD & OPENING FOR NEW HVAC UNIT | $ 375.00 EA. |
| | IDENTIFY EXCISTING LAN LINES IN EXISTING PANEL REMOVE AND REPLACE SPECIFIC WITH NEW LINES | $ 2,160.00 |

Please note: Unless otherwise specified, engineering, permits, drawings, freight or tax is not included. All installation prices pending area being free of any and all obstructions. If an additional trip is required, a minimum charge of $500.00 will apply. Lift/Equipment, sprinklers, main electrical hook-up by others. Handicapped hardware by others. Window Cleaning By Others.

ACCEPTANCE OF PROPOSAL - The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will made as outlined above.

A liquidated damage charge of one and one half (1 1/2%) perc... month (18% annual rate), or the highest rate allowed by ... be charged on the amount not paid by the end of the month ...wing purchase.

Buyer shall pay collection costs of overdue accounts including reasonable attorney's fees.

All credit card purchases will have a 3% surcharge to the above quoted prices.

Signature: [signature] Date: 08-23-2000
Mike Kaminski

Signature: ______________________ Date:

EXHIBIT "12"

# UNITED Partition Systems, Inc.

2180 S. Hellman Avenue
Ontario, California 91761

# Invoice

| DATE | INVOICE # |
|---|---|
| 9/19/2000 | 9404-1 |

| REP | MRK | PROJECT | #9404 |
|---|---|---|---|

| BILL TO | SHIP TO |
|---|---|
| DFAS-DE<br>P.O. Box 203083<br>Denver, CO 80220 | FISUSC F02604 00FA033<br>14171 W STARFIGHTER ST.<br>LUKE AFB, AZ 85309 |

| P.O. NO. | TERMS | DUE DATE | FOB |
|---|---|---|---|
| F0260400FA0 | Due On Receipt | 9/19/2000 | prepaid/add |

| DESCRIPTION | Prior Amt | Prior % | Curr % | Total % | Est Amt | AMOUNT |
|---|---|---|---|---|---|---|
| United Partition Systems,Inc. Contract # GS07F0343j For Luke AFB Order # F0260400FA033 | | | | | | |
| ITEM # 001 FOR CONTRACT F1SUSC01450100 | | | 90.00% | 90.00% | 73,188.00 | 65,869.20 |
| ITEM # 002 FOR CONTRACT F1SUSC01450101 | | | 90.00% | 90.00% | 7,408.00 | 6,667.20 |
| ITEM # 003 FOR CONTRACT F1SUSC01450102 | | | 90.00% | 90.00% | 15,183.00 | 13,664.70 |
| ITEM # 004 FOR CONTRACT F1SUSC01450103 | | | 90.00% | 90.00% | 12,625.00 | 11,362.50 |

United Partition Systems, Inc. Dunns#10773-7652
Federal Employer Identification Number 95-3812502

**Total** $97,563.60