# In the United States Court of Federal Claims

No. 03-1242C

(Filed: October 12, 2010)

| | |
|---|---|
| **UNITED PARTITION SYSTEMS, INC.,** ) | Application for attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d); justification for government's posture in the case; fees; expenses |
| **Plaintiff,** ) | |
| **v.** ) | |
| **UNITED STATES,** ) | |
| **Defendant.** ) | |

Laurence Schor, Asmar, Schor & McKenna, PLLC, Washington, D.C., for plaintiff. With him on the briefs was Susan L. Schor, Asmar, Schor & McKenna, PLLC, Washington, D.C.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Tony West, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this contract case, a post-trial judgment was issued in favor of plaintiff, United Partition Systems, Inc. ("United Partition"). *See United Partition Sys., Inc. v. United States*, 90 Fed. Cl. 74 (2009) ("*United Partition II*").[1] That judgment became final when the government dismissed an appeal it had taken from the judgment. *United Partition Sys., Inc. v. United States*, No. 2010-5068 (Fed. Cir. June 21, 2010) (order dismissing appeal under Fed. R. App. P. 42(b)). Now, United Partition has filed a motion for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). It seeks an award of

---

[1]Earlier, the court had denied a motion by the government to dismiss United Partition's complaint for lack of subject matter jurisdiction. *See United Partition Sys., Inc. v. United States*, 59 Fed. Cl. 627 (2004) ("*United Partition I*"). After that decision, the parties spent considerable time in fruitless efforts to mediate or settle the contractual dispute.

$112,562.01 in attorneys' fees and expenses, $14,512.50 in fees for paralegals and law clerks, and $8,559.21 in other expenses.[2]  The government resists such an award, maintaining that its position in the underlying litigation was substantially justified and questioning the bases for, and reasonableness of, United Partition's attorneys' fee request.

## BACKGROUND[3]

United Partition is a manufacturer of prefabricated modular buildings, primarily but not exclusively for indoor use.  Having obtained a Multiple Award Schedule contract from the General Services Administration ("GSA"), United Partition's product consequently was included on the Federal Supply Schedule ("FSS") by GSA.  On June 5, 2000, the Air Force issued a delivery order to United Partition for the construction and installation of a modular building inside a warehouse at Luke Air Force Base ("AFB"), coupled with the removal of three existing modular buildings.  *United Partition II*, 90 Fed. Cl. at 79-80.  Prior to the issuance of the delivery order, United Partition's representatives and Air Force personnel held a meeting at Luke AFB during which they agreed upon the use of particular materials for the construction of the modular building.  *Id.* at 78-79.

United Partition substantially performed under the delivery order and nearly completed construction of the building.  *United Partition II*, 90 Fed. Cl. at 81-83.  However, the Air Force expressed concerns whether construction of the modular building met the terms of the contract. *Id.* at 80-81.  Among other things, Air Force personnel questioned (1) United Partition's placement of data and electrical wiring in the same raceways, (2) its use of hardboard substrate wall panels covered in a vinyl-clad finish because those panels might not meet the contract's requirement that the modular building walls be "Class-A fire rated and UL [Underwriters Laboratory] approved," (3) its use of UL-listed electric conduit wrap for the installation of the building's wiring system in place of a purported contractual requirement that such wiring be installed in "UL approved raceway channels," and (4) its planned placement of HVAC condensing units outside the warehouse walls rather than on top of the modular building.  *Id.* at 79-83.[4]  On approximately August 18, 2000, the Air Force demanded that United Partition cease

---

[2]In its initial application, United Partition sought $99,394.42 in attorneys' fees and expenses, $11,750.00 in fees for a paralegals and law clerks, and $7,384.91 in other expenses.  Pl.'s Appl. for Fees and Expenses Under the Equal Access to Justice Act ("Pl.'s EAJA Appl.") at 1.  A supplement filed July 30, 2010, requested an additional $8,487.64 in fees for attorneys and $2,412.50 in fees for a paralegal and law clerk.  Pl.'s Supp. Appl. for Fees and Other Expenses Under the Equal Access to Justice Act ("Pl.'s Supp. EAJA Appl.").  A second supplement filed September 28, 2010, requested further amounts consisting of $4,679.95 in fees for attorneys, $350.00 in fees for a paralegal and law clerk, and $1,174.30 in other expenses.  Pl.'s Second Supp. Appl. for Fees and Other Expenses ("Pl.'s Second Supp. EAJA Appl.") at 1.

[3]This description provides a summary of the facts addressed in greater detail in *United Partition II*, 90 Fed. Cl. 74.

[4]The president of a competing contactor, Allied Modular, wrote to the Air Force listing these items as defects and urging that United Partition's contract be terminated for default and that a reprocurement contract be issued to his firm.  *United Partition* II, 90 Fed. Cl. at 82 (citing and

work on the project and vacate Luke AFB. *Id.* at 81. Following numerous inconclusive exchanges between United Partition and Air Force personnel regarding whether the building materials and placement of components were satisfactory, the Air Force's contracting officer terminated the contract for default on August 20, 2001. *Id.* at 82-85. United Partition was not allowed to return to Luke AFB to correct deficiencies and complete construction. *Id.* at 90. United Partition's building was dismantled, and another contractor constructed a replacement building using some of the materials United Partition had provided. United Partition was then assessed excess reprocurement costs. *Id.* at 86.

Subsequent to the termination of the contract, United Partition filed a claim with the Air Force's contracting officer. *See United Partition I*, 59 Fed. Cl. at 631. After that claim was denied by the Air Force's contracting officer, United Partition took an appeal to the Armed Services Board of Contract Appeals ("ASBCA" or "Board"), where the key issue was whether the Air Force's contracting officer had authority to act on the claim. *Id.* The Board ruled that the Air Force's contracting officer did not have such power and that United Partition's claim should have been transferred to GSA's contracting officer because the disputed issues regarding the default related to materials subject to the FSS schedule contract and concerned whether United Partition's performance was "excusable" within the meaning of 48 C.F.R. ["FAR"] 8.405-5 and Clause I-FSS-249-B of the schedule contract. *See United Partition I*, 59 Fed. Cl. at 633-36 (quoting *United Partition Sys., Inc.* ASBCA Nos. 53915, 53916, 03-2 BCA ¶ 32,264, 2003 WL 2012838 (May 02, 2003)). The Board consequently dismissed United Partition's appeal for lack of jurisdiction. United Partition then filed a jurisdictionally protective complaint in this court on May 20, 2003, alleging a breach of contract, a breach of the duty to cooperate, and a flawed termination for default resulting in a termination for convenience by the Air Force. *United Partition I*, 59 Fed. Cl. at 633. Five days later, the Air Force's contracting officer referred United Partition's claim to GSA's contracting officer, who within five months issued a decision consistent with that of the Air Force's contracting officer, rejecting United Partition's claim and upholding the Air Force's demand for excess reprocurement costs. *Id.*

In this court, the government moved to dismiss United Partition's complaint for lack of subject matter jurisdiction, relying on the fact that the Air Force contracting officer did not have jurisdiction to act on United Partition's claim and arguing that the court was accordingly lacking authority under the Contract Disputes Act, 41 U.S.C. § 605, at the time United Partition filed its complaint. *See United Partition I*, 59 Fed. Cl. at 633. In denying that motion, the court held that the Air Force's contracting officer had jurisdiction over some aspects of United Partition's performance of the delivery order, but he also had responsibility to forward the submission to GSA's contracting officer for resolution of United Partition's excusability claim, which had not been done. *Id.* at 639-40. Consequently, "United Partition could properly treat its claim as denied pursuant to 41 U.S.C. § 605(c)(5) and bring its claim within the jurisdiction of this [c]ourt by filing a timely complaint," which had been accomplished. *Id.* at 640. In doing so, the court commented that "[a]lthough the Air Force's contracting officer did *not* retain authority to evaluate United Partition's excusability defense, that is precisely what he did in issuing his final

---

quoting PX 1 (Letter to SSgt. Brian Milam from Kevin Peithman, Allied Modular (Sept. 13, 2000))).

decision denying United Partition's claim and demanding reprocurement costs." *Id.* at 636; *see also id.* at 643 (noting the "excusability aspect of United Partition's claim").

At the subsequent trial on liability and damages, despite the prior ruling of both the Board and the court that United Partition had raised an excusability defense, *see United Partition*, 2003 WL 2012838; *United Partition I*, 59 Fed. Cl. at 636, 643, the government contended that United Partition had failed to raise an excusability defense prior to the termination for default. *See United Partition II*, 90 Fed. Cl. at 90.  The court rejected that contention, and, based upon the evidentiary record of the trial, ruled that the government had improperly terminated the contract for default. *Id.* at 90-91.  The court found that the Air Force contracting officer had not timely referred the dispute to the GSA contracting office — an action required by United Partition's GSA contract and the FAR — after United Partition raised an excusability defense. *Id.* at 90.  The court additionally found that the Air Force had harmed United Partition by depriving it of the opportunity to cure defects in its performance and complete the contract. *Id.* at 90-91.  The Air Force's failure to abide by the procedural requirements for default termination under the GSA contract, and the harm to United Partition as a result of that failure, converted the termination for default into a termination for convenience. *Id.* at 88, 91.  The court rejected each of the Air Force's claimed defects in United Partition's performance except for that concerning the fire rating of the modular wall panels. *Id.* at 93-95.  After having made adjustments to United Partition's claimed amount of damages to account for United Partition's unperformed work under the contract and the nonconforming wall components, the court awarded United Partition damages in the amount of $87,624.50. *Id.* at 95.

## STANDARDS FOR DECISION

EAJA provides a mechanism by which a qualifying party may receive an award of reasonable attorneys' fees. 28 U.S.C. § 2412(d)(1)(A), (B).  To be eligible for such an award, five criteria must be satisfied: (1) the applicant must have been a "prevailing party" in a suit against the United States; (2) the government's position must not have been "substantially justified;" (3) there cannot be any "special circumstances [that] make an award unjust;" (4) any fee application must be submitted to the court within thirty days of final judgment in the action and also be supported by an itemized statement; and (5) a qualifying party must, if a corporation or other organization, have not had more than $7,000,000 in net worth and 500 employees at the time the civil action was initiated. *Id.*; *see Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990); *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 696 (2010); *ACE Constructors, Inc. v. United States*, 81 Fed. Cl. 161, 164 (2008).

United Partition bears the burden of establishing that it meets these requirements, except that the government has the burden to show that its position was substantially justified. *See White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479-80 (2006); *Al Ghanim Combined Group Co. v. United States*, 67 Fed. Cl. 494, 496 (2005).  Respecting EAJA entitlement, only the application of the substantial justification condition is at issue in this case.  *See* Def.'s Resp. to Pl.'s Appl. for Fees and Expenses pursuant to the Equal Access to Justice Act ("Def.'s Opp'n") at 2.

As a waiver of sovereign immunity, EAJA must be "strictly construed." *Levernier Constr. Inc. v. United States*, 947 F.2d 497, 502 (Fed. Cir. 1991); *see also Fanning, Phillips &*

4

*Molnar v. West*, 160 F.3d 717, 721 (Fed. Cir. 1998).  Courts do not have the discretion "to expand liability beyond that which was explicitly consented to by Congress" in order to "do equity." *Levernier*, 947 F.2d at 502 (citation omitted).

## ANALYSIS

### A. *Substantial Justification*

The government bears the burden of proving that its litigation position was "substantially justified." *See White*, 412 F.3d at 1315; *Hillensbeck*, 74 Fed. Cl. at 479-80; *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 512 (2003).  An award pursuant to Section 2412(d) is precluded if the government shows its position to be "'justified in substance or in the main'— that is, justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  The court does not examine a party's stance upon every individual issue addressed in the case, *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999); rather the question is "whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.' " (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995))).  Thus, the court must look to "the entirety of the conduct of the government . . . including the action or inaction by the agency prior to litigation." *Chiu*, 948 F.2d at 715.

The government's position "can be justified even though it is incorrect, and it can be substantially justified if a reasonable person could think it correct." *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001) (internal quotations omitted).  The inquiry is "not what the law now is, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006) (quoting *Pierce*, 487 U.S. at 561).  "Substantially justified" is not to "'be read to raise a presumption that the [g]overnment['s] position was not substantially justified simply because it lost the case.'" *Scarborough v. Principi*, 541 U.S. 401, 415 (2004) (quoting H.R.Rep. No. 96-1005, at 10 (1980)).  Rather, substantial justification occurs somewhere between winning the case and being "merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.

The government supports the proposition that its overall position in this litigation was substantially justified by making two arguments.  First, the government contends that it was correct in its conclusion that United Partition's wall components did not meet the Class A fire rating as required by the contract and therefore that it was justified in terminating the contract for default on that ground.  Def.'s Opp'n at 8.  Second, the government argues that "it reasonably believed that even if the Air Force lacked authority to terminate United's contract, United was not prejudiced by this alleged procedural error." *Id.* at 7-8.

The government's contention regarding the fire rating of the modular walls supplied by United Partition was one of a number of alleged defects asserted by the government as United Partition's construction was nearing completion.  None of the other asserted defects were valid. *United Partition II*, 90 Fed. Cl. at 81-83, 93-95.  In effect, the Air Force's assertion of numerous

defects complicated the interaction between the two parties. Focusing specifically on the discourse between the Air Force and United Partition respecting the fire rating of the walls, the parties looked to information regarding components of the walls provided by the manufacturers of those components, which information had been supplied by United Partition to GSA in conjunction with the FSS contracting process. *Id.* at 83-84. The Air Force did not then cause the wall components to be tested nor did it require United Partition to do so. *Id.* at 84. However, the terms of the discourse between the parties regarding the walls should have alerted *both* parties to the fact that the fire classification of the walls had to be referred to GSA's contracting officer and could not be definitively addressed by the Air Force's contracting officer.

The pertinent procedural requirements for default termination were specified in the FAR and the GSA Contract. *United Partition II*, 90 Fed. Cl. at 88. The "Termination for Default" provision of the FAR provided, "[s]hould the contractor claim that the failure was excusable, the ordering office shall promptly refer the matter to the schedule contracting officer." FAR § 8.405-5(a)(2) (1999). The "Disputes" provision of the FAR provided, "[t]he ordering office shall refer all unresolved disputes under orders to the schedule contracting office for action under the Disputes clause of the contract." FAR § 8.405-7 (1999). The GSA contract contained a "Default" clause allowing the ordering officer to "exercise the same right of termination" as the GSA contracting officer, with the exception "that when failure to deliver articles or services is alleged by the [c]ontractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office." *United Partition II*, 90 Fed. Cl. at 88.

There is no ambiguity in these provisions, and their mandatory language leaves no room for doubt. Nevertheless, the Air Force contracting officer terminated United Partition's contract for default after United Partition raised an excusability defense. *See United Partition II*, 90 Fed. Cl. at 90. Given the clarity of the regulations on point and the Air Force contracting officer's direct contravention of them, the government's position cannot be described as "substantially justified." *See PCI/RCI v. United States*, 37 Fed. Cl. 785, 790 (1997) (finding no substantial justification for government's position where the contracting officer "continually misapplied" and "misconstrued" the FAR).

The government persisted in its procedural error notwithstanding the decisions by the Board and this court that the Air Force's contracting officer did not have authority to terminate the contract for default. Even at this post-judgment stage of the proceedings, the government contends that it "reasonably believed that the Court's previous opinion [in *United Partition I*] dealt only with United [Partition's] claim, not whether the Air Force lacked authority to terminate United [Partition's] contract for default." Def.'s Opp'n at 7. To the contrary, in *United Partition I*, the court explicitly held that "the Air Force's contracting officer lacked the authority to issue the final decision that it did issue, in light of these contractual and regulatory provisions and the fact that United Partition raised an excusability defense." *United Partition I*, 59 Fed. Cl. at 636. There simply is no support for the government's argument that it reasonably believed the Air Force possessed the authority to terminate United Partition's contract.[5] Even

---

[5]The government points to the fact that United Partition originally submitted its claim to the Air Force, not the GSA, and thus never claimed during the administrative proceeding that the Air Force contracting officer lacked authority to terminate its contract for default. Def.'s Opp'n at 6

without the Board's and the court's opinions as guidance, the pertinent regulations unequivocally mandated that the Air Force contracting officer refer United Partition's claim to the GSA contracting officer once United Partition raised its excusability defense.

Importantly, the Air Force compounded its procedural and substantive errors by barring United Partition from the work site and not providing United Partition with an opportunity to cure the one asserted defect that had validity. *United Partition II*, 90 Fed. Cl. at 90. Instead, the Air Force permitted a reprocurement contractor to construct a replacement modular building, using some materials that had been supplied by United Partition. *Id.* at 86. Accordingly, the prejudice to United Partition from the Air Force's actions has been evident from the early stages of this dispute.

The government also urges the court to find that its position was substantially justified because, even if the court did not accept all of the government's arguments, it accepted the government's "primary argument" when it "agree[d] with the [g]overnment that the walls of the modular building, and thus the building itself, failed to meet the contract specifications." Def.'s Opp'n at 7. The government points to a recent ruling of this court for the proposition that when the court accepts the government's "primary argument," it may find substantial justification for the government's position, despite the plaintiff's success on the merits. *See id.* (citing *Klinge Corp. v. United States*, No. 08-551, 2009 WL 3073516, at *5 (Fed. Cl. Sept. 23, 2009)).

The decision in *Klinge* is not helpful to the government chiefly because in this case, the court did not accept the government's primary argument. Besides arguing here that it rightfully terminated United Partition's contract for default because United Partition did not raise an excusability defense, the government alternatively contended that even if United Partition did raise an excusability defense, it was not prejudiced by the Air Force's failure to refer its claim to the GSA contracting officer. *See United Partition II*, 90 Fed. Cl at 90-91 ("[T]he government argues that United did not raise an excusability defense prior to the termination for default[,]" and "[t]he government alleges there was no harm to United because United was on notice."). The court rejected both of these arguments, finding that United Partition had raised an excusability defense and thus "the wrong contracting officer terminated the contract, to the prejudice of United." *Id.* at 91. While the non-conforming walls may have been one of the reasons for the government's termination of the contract and although the court found that the walls were indeed non-conforming, the court accepted United Partition's primary argument that the contract was improperly terminated and United Partition was prejudiced by being foreclosed from an opportunity to cure the defect. *Id.* at 91.

Additionally, in *Klinge*, the court noted that "[t]he points [respecting] which [it] agreed with plaintiff were not, ultimately, controlling as to the principal relief sought, an injunction." 2009 WL 3073516, at *5. In contrast, here the court's acceptance of United Partition's primary argument dictated the outcome of the case and resulted in the court granting United Partition the exact relief it sought, namely, damages, plus nullification of the Air Force's demand for

---

n.2. However, both the pertinent provisions of the FAR and the GSA contract required the contractor's claim to be referred by the ordering office, here the Air Force contracting officer, to the GSA contracting office for decision. United Partition thus could not have submitted its claim directly to GSA's contracting officer.

procurement costs.  *See United Partition II*, 90 Fed. Cl. at 95.  In short, United Partition obtained nearly all of the relief it sought in the case.

Overall, in this case, the "mutability of the agency's position . . . detracts from the asserted reasonableness of the agency's action below."  *California Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 729 (1999) (noting that the agency changed its position twice and adopted three distinct approaches to the controversy between the time of the initial award of the contract to the plaintiff and the litigation before the court); *see also*, *Chiu*, 948 F.2d at 715. Here, the government altered its position a number of times as the dispute progressed.  Despite having little, if any justification, the Air Force took issue with the UL "approval" of the electrical raceways and the installation of the HVAC units.  Yet, the Air Force changed its position regarding UL approval of the electrical raceways no less than three times.  *See United Partition II*, 90 Fed. Cl. at 91 n.23 (noting that UL would not have "approved" raceways, but that United Partition had obtained a UL "listing" for the raceways).  As for the HVAC units, United Partition was prevented from installing them by the Air Force's failure to remove swamp coolers which had provided air conditioning in the warehouse.  *Id.* at 81-82.  However, the Air Force first contended that under the contract the HVAC units were to be installed in a manner that avoided having to remove the swamp coolers — a position directly contradicted by the language of the contract — and then simply ignored United Partition's attempts to resolve the issue.  *Id.*

The government was also "far from consistent" in its position as to the fire rating of the wall systems — a particularly troubling fact given that the flammability of the wall systems served as its primary reason for the termination of the contract.  *See id.* at 85, 91.  Although the government took numerous positions regarding the fire rating of the wall panels, it terminated the contract because it believed, without testing, that "the hardboard was 'a highly flammable product,'" apart from the vinyl covering.  *Id.* at 93 n.27 (internal citation omitted).  Under the contract, the Air Force had a right to inspect and test the wall system to determine whether it met the terms of the contract, and it had the right to compel United Partition to do the same, but it could not make a finding that the walls were non-conforming without such testing.  *Id.* at 93. The Air Force did just that, however, and demanded that United Partition cease all work on the property and never allowed United Partition back to Luke AFB, thereby depriving United Partition of any opportunity to cure the defects in its performance.  *Id.* at 81, 90.

The government's inconsistent positions on the decisive issues of this case undermine its argument that its litigation position, taken as a whole, was "substantially justified."  Accordingly, because the government has failed to carry its burden of proof and persuasion on the issue, and because United Partition otherwise is a qualifying party for an award under EAJA, United Partition is entitled to an award of reasonable attorneys' fees and expenses.

### B.  *Fees and Expenses*

A prevailing party may recover "reasonable" fees and expenses under EAJA.  *See* 28 U.S.C. § 2412(d)(2)(A).  In deciding what constitutes "reasonable" fees and expenses, "[t]he trial court has considerable discretion[,]" *Information Sciences Corp. v. United States*, 88 Fed. Cl. 626, 634 (2009) (quoting *Hubbard v. United States*, 480 F.3d 1327, 1334 (Fed. Cir. 2007)), and may exclude hours that were not "reasonably expended" or hours that are "excessive, redundant,

or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990).

    1.  *"Incurred" Fees.*

United Partition bears the burden of proving that it "incurred" the fees and expenses that it seeks to recover. *See* 28 U.S.C. § 2412(d)(1)(A). A plaintiff "incurs" fees and expenses for the purposes of EAJA if it has paid those fees and expenses or if there is an "express or implied agreement that the fee award will be paid over to the legal representative." *Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991).

The government argues United Partition did not "incur" the hours it claims because the hours were "written off" or billed at a rate of "$0.00." *See* Def.'s Rebuttal to Pl.'s Reply to Def.'s Resp. to Pl.'s Appl. for Fees and Expenses Pursuant to the Equal Access to Justice Act ("Def.'s Rebuttal") at 1-3. Alternatively, the government argues that because United Partition's fee arrangement with its counsel provides that some portion of its fees may be reduced even if United Partition did "incur" some attorneys' fees, it is impossible to determine the precise amount. *See id.* at 4-5. United Partition avers that the decision to not list the hourly rates in the monthly billing statements was "[b]ased on the agreement to defer fees" and "internal accounting reasons," and that the use of the phrase "write off" was to account for the initial retainer and the implementation of the revised fee agreement. Pl.'s Reply, Ex. B ¶ 19 (Aff. of Laurence Schor (Sept. 20, 2010)).

In connection with retaining a successor counsel in the case, United Partition entered into a two-step fee agreement with that counsel.[6] As the first step, it paid a lump sum to pursue the case with the hope of obtaining a successful result through alternative dispute resolution ("ADR"). *See* Pl.'s Reply, Ex. A at 2. If a successful result could not be obtained through mediation or ADR, the fee agreement provided as a second step that United Partition would "confer" with counsel and "[a]ny further work [would] be subject to a separate fee agreement." *Id.* In or about May of 2005, United Partition's counsel concluded that a successful result was not possible through ADR. *See id.*, Ex. B ¶ 13. Pursuant to the fee agreement, United Partition and its counsel entered into discussions to resolve United Partition's financial obligations to counsel going forward. *See id.*, Ex. C ¶¶ 11-14 (Aff. of Robert Kaminski (Sept. 17, 2010)). In due course, the parties entered into an oral fee agreement under which United Partition would incur and owe to counsel all fees and expenses "at the established hourly rates [at which the] work was performed" but "the [f]irm would defer collection until the case was completed (including the effort to obtain EAJA fees), at which time any and all EAJA fees recovered would be paid over to the [f]irm." *Id.*, Ex. B ¶ 16. United Partition and counsel further agreed that counsel would "consider writing off some reasonable amount" of its attorneys' fees, once the litigation was concluded and whether or not EAJA fees were awarded. *Id.*

---

[6]United Partition's first counsel, Paul Dauer, provided representation throughout the proceedings on defendant's motion to dismiss that resulted in the decision in *United Partition I*, but in January 2005, United Partition retained Laurence Schor, then a partner of McManus, Schor, Asmar & Darden, L.L.P. to represent it in the litigation. *See* Pl.'s Reply, Ex. A at 1-3 (Representation Agreement (Jan. 19, 2005)).

The use of the billing rate of "$0.00" comports with United Partition's fee agreement. The fee agreement specified that a possible reduction would diminish the total fee, not the hours for which United Partition was billed or the rate at which those hours were billed. *See* Pl.'s Reply at Ex. B. Consequently, United Partition's counsel could use an ostensible billing rate of "$0.00" in anticipation that the total fee would be established at the conclusion of the litigation. The timing of the emergence of the billing practice at issue supports United Partition's explanation as well. The "$0.00" billing rate first appears in United Partition's invoices to account for time expended in late April 2005, *see* Pl.'s EAJA Appl., Ex. F at 101 (Asmar, Schor & McKenna Itemized Billing), and the phrase "write off" accounts for time expended in May 2005. *See id.* The disputed billing practices thus arose at the time that United Partition entered its revised fee agreement, on or about May of 2005. *See* Pl.'s Reply, Ex. B ¶¶ 13-16, 22.

Alternatively, the government claims that because "some or all of the additional fees may be written off once the EAJA application process is completed," it is impossible to determine the amount of fees United Partition incurred beyond its initial lump sum payment. *See* Def.'s Rebuttal 4-5.[7] This contention ignores the holding of *Phillips* that a plaintiff "incurs" fees under EAJA so long as there is "an express or implied agreement that the fee award will be paid over to the legal representative." *See Phillips*, 924 F.2d at 1583. In *Phillips*, the plaintiff paid a lump sum to her counsel with the understanding that the payment of any additional attorneys' fees would be "contingent upon success, recovery to be based upon a statutory fee award if [the plaintiff] prevailed." *Id.* at 1582. The plaintiff's counsel "kept bookkeeping entries" of his time, but "once the $2500 was paid by the client, she was not responsible for further payment . . . and no further payment was made by her during the course of the litigation." *Id.* The court construed the agreement to mean that the plaintiff was obligated to turn over to her attorney any EAJA fees awarded to her and held that she "incurred attorney fees within the meaning of the EAJA only in such amount as may be awarded to her." *Id.* at 1583. The modest difference in the facts here compared to those in *Phillips* supports United Partition's position.

United Partition is obligated to pay to its counsel "any and all EAJA fees." Pl.'s Reply, Ex. B ¶ 16; *id.*, Ex. C ¶ 11. The plaintiff in *Phillips* was not responsible for *any* further fees beyond her preliminary lump-sum payment, if EAJA fees were not awarded. *See* 924 F.2d at 1582. Here, United Partition remains liable to its counsel for at least some portion of its attorneys' fees, whether or not EAJA fees are awarded. *See* Pl.'s Reply, Ex. B ¶¶ 16, 17, *id.*, Ex. C ¶ 13. In short, if the plaintiff in *Phillips* "incurred" fees for the purposes of EAJA, there can be no doubt that United Partition did so as well. *See also Ed A. Wilson, Inc. v. General Servs. Admin.*, 126 F.3d 1406, 1409-10 (Fed. Cir. 1997) (noting that plaintiffs that have third parties pay for their legal representation, such as those whose costs are paid by unions or insurers, still "incur" legal fees even where "the litigant will incur no additional obligation of payment to

---

[7]United Partition's recent invoices submitted with its supplement to its EAJA application do not reflect a "$0.00" billing rate. *See* Pl.'s Supp. EAJA Appl. at Ex. A (Asmar, Schor & McKenna, PLLC Invoice #926 (July 20, 2010)). The government asserts that these invoices are inconsistent with United Partition's claim that the fees will be deferred until after the EAJA litigation. *See* Def.'s Rebuttal at 4. In light of the government's argument that the "$0.00" billing rate means that United Partition did not "incur" any fees, *see* Def.'s Response at 9-11, United Partition's decision to use billing rates in its supplemental application does not undermine its claim that its fees will not be collected until such time as United Partition's EAJA award is determined.

counsel"); *Preseault v. United States*, 52 Fed. Cl. 667, 674-75 (2002) (holding that a plaintiff represented on a pro bono basis "actually incurred" attorneys' fees within the meaning of Section 304(c) of the Uniform Relocation Assistance and Real Property Acquisitions Policies Act, 42 U.S.C. § 4654(c)).[8]

   2. *Fees incurred prior to litigation before this court.*

   The government contends that United Partition has improperly requested attorneys' fees incurred prior to the filing of its claims in this court. *See* Def.'s Opp'n at 14-15.  Most of those fees relate to the proceedings before the Board which antedated United Partition's complaint. Textually, EAJA authorizes a court to award fees related to an "adversary adjudication." *See* 28 U.S.C. § 2412(d)(3).  In full, 28 U.S.C. § 2412(d)(3) provides:

> In awarding fees and other expenses under this subsection to a prevailing party *in any action for judicial review of an adversary adjudication*, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code, *or an adversary adjudication subject to the Contract Disputes Act of 1978*, the court shall include in that award fees and other expenses to the same extent authorized in subsection (a) of such section, unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

(Emphasis added).  Accordingly, this court may only award United Partition fees and expenses incurred prior to the litigation in this court if United Partition was subject to or initiated "an adversary adjudication" of one of the two types specified in 28 U.S.C. § 2412(d)(3), which involve actions in court arising after a non-judicial but adversarial disposition.

   An appeal to the Board pursuant to the Contract Disputes Act is an action "subject to the Contract Disputes Act of 1978" and is a proceeding listed under 5 U.S.C. § 504(b)(1)(C).  *See* 5 U.S.C. § 504(b)(1)(C) ("adversary adjudication" includes, among other proceedings, "any appeal of a decision made pursuant to section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605) before an agency board of contract appeals as provided in section 8 of the Act (41 U.S.C. 607)."); *see also* 41 U.S.C. § 607(a)(1) (empowering the Secretary of Defense to create the Board).  Thus, an appeal to the Board could qualify as an "adversary adjudication," within the meaning of Section 2412(d)(3).  *See also United Constr. Co., Inc. v. United States*, 11 Cl. Ct. 597, 599 (1987) ("[A]n EAJA award compensates a prevailing party only for costs and

---

[8]Citing *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593 (1997), the government suggests that United Partition may receive a "windfall" recovery because its counsel might reduce its attorneys' fees once the EAJA litigation has concluded.  *See* Def.'s Opp'n at 10.  Considering that United Partition's contract with its attorneys requires it to pay its fees at the actual hourly rates of its attorneys, which significantly exceeds the allowable rate for attorneys' fees under EAJA, and requires it to pay "any and all EAJA fees" recovered over to its counsel, there is no cause for concern that United Partition may receive a "windfall" recovery.  *Cf. KMS Fusion*, 39 Fed. Cl. at 604-05 (concluding that plaintiff may not recover attorneys' fees at a rate greater than the discounted rate which she was contractually obligated to pay to her counsel).

attorneys' fees and expenses incurred in a civil suit or agency adjudication, including an appeal to a contract board of appeals.").

However, the Board never conducted an "adversary adjudication" in United Partition's case.  To the contrary, the Board dismissed United Partition's claims for lack of jurisdiction.  *See United Partition*, ASBCA Nos. 53915, 53916, 2003 WL 2012838; *see also United Partition I*, 59 Fed. Cl. at 637 (deeming United Partition's appeal to the Board a legal nullity (citing *National Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed. Cir. 1988))).  Moreover, even if the Board had jurisdiction and had conducted an "adversary adjudication" of United Partition's claim, this court could not have conducted an "action for judicial review" of that adjudication.  An appeal for judicial review of a decision from the Board is within the exclusive jurisdiction of the Federal Circuit.  *See* 28 U.S.C. § 1295(a)(10).  Rather, after dismissal of its claims by the Board, United Partition filed an original suit to contest the termination in this court, as it was entitled to do under 41 U.S.C. § 609(a)(1).  *See United Partition I*, 59 Fed. Cl. at 634; *National Neighbors*, 839 F.2d at 1541 (Under the CDA a contractor may appeal a contracting officer's adverse decision to "the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court.").

Consequently, the court may not award attorneys' fees and costs to United Partition incurred in connection with its appeal to the Board.  Nor may United Partition recover attorneys' fees for its communications with the Air Force's or GSA's contracting officers.  *See Levernier Constr.*, 947 F.2d at 500 (EAJA does not "entitle a prevailing party to recovery of fees and expenses incurred during prosecution of [a] claim before the contracting officer"); *Hillensbeck*, 74 Fed. Cl. at 482 (EAJA does not allow the recovery of "those [fees otherwise] incurred during administrative consideration of a claim before litigation." (quoting *United Constr. Co.*, 11 Cl. Ct. at 599)).  In short, United Partition may only recover those fees and expenses incurred respecting its litigation in this court.  *See* 28 U.S.C. § 2412(d)(1)(A) (authorizing the award of attorneys' fees and expenses in "civil action[s]").

The government correctly points to May 15, 2003 as the first date on which the invoices show that United Partition's attorneys began to prepare for litigation in this court.  *See* Pl.'s EAJA Appl., Ex. G at 10 (Best, Best & Krieger Itemized Billing) (stating that attorney Eric Jeppson "[b]eg[a]n [d]rafting [c]omplaint [f]or [f]iling [w]ith Court of Federal Claims").  Although United Partition necessarily would have performed preliminary factual and legal research before May 15, 2003, the court cannot determine with any reasonable degree of certainty the hours representing that work.  Therefore, United Partition may recover only those fees and expenses incurred from May 15, 2003 onwards.  *See Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (Under EAJA, the trial court may award "reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court."); *Levernier Constr.*, 947 F.2d at 501 n.2 ("[F]ees for legal and factual research preparatory to . . . litigation" before the court are recoverable under EAJA.); *Dalles Irrigation Dist.*, 91 Fed. Cl. at 705-06 (allowing recovery of fees and expenses sustained beginning on date plaintiff's invoices demonstrated that work in preparation of the complaint commenced).

Additionally, United Partition may only recover those fees and expenses arising after May 15, 2003 to the extent that they were incurred solely in preparation for the litigation before this court.  *See Oliveira*, 827 F.2d at 744 (Attorneys' expenses "that are not incurred or expended

solely or exclusively in connection with the case before the court . . . cannot be awarded under the EAJA."); *see also Universal Fidelity LP v. United States*, 70 Fed. Cl. 310, 318-19 (2006) (reducing plaintiff's award where invoices showed simultaneous time spent preparing for litigation and work involving an agency protest). Accordingly, the court will exclude 2.2 hours of counsel's time from United Partition's award to account for hours that were plainly expended on United Partition's then-pending claim before GSA's contracting officer, and not preparing for litigation in this court. *See* Pl.'s EAJA Appl., Ex. G at 10-13 (Invoice 940999 (Aug. 14, 2003)).

    3.    *Degree of success.*

The government also argues that United Partition's award should be reduced because it achieved only "limited success." *See* Def's Opp'n at 12. United Partition responds that its success in the case was "complete" or at least nearly so, and thus justifies a full award of attorneys' fees and expenses. *See* Pl.'s Reply at 10.

"The most critical factor" a court must consider in determining whether to adjust an award of attorneys' fees is "the degree of success obtained" in the litigation. *Hensley*, 461 U.S. at 436. In *Hensley*, the Supreme Court delineated two categories of cases that arise in the context of awarding attorneys' fees: lawsuits comprised of "distinctly different claims for relief . . . based on different facts and legal theories" and lawsuits in which plaintiff's claims are grounded in "a common core of facts or will be based on related legal theories." *Id.* at 434-35. In the former category, expenses incurred in relation to any unsuccessful claims must be excluded. *See id.* at 435. On the other hand, if the case falls within the latter category, "the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

United Partition argued, based on a "common core of facts[,]" *Hensley*, 461 U.S. at 435, that the government wrongfully terminated its contract, and it requested a single form of relief from the court — damages. *See* Pl.'s Post-Trial Brief at 25. Thus, the court must look to the significance of United Partition's success in relation to the hours it spent on the litigation. *See Hensley*, 461 U.S. at 435.

In general, "[t]here is no precise rule or formula for making" degree-of-success determinations, and the court "necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436-37. However, in *Hensley*, the Supreme Court provided general parameters to guide the pertinent analysis. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [that] should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. A plaintiff can obtain "excellent results" even if it lost on some claims, and "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.; see also Keeton Corrs., Inc. v. United States*, 62 Fed. Cl. 134, 138 (2004) ("[I]t is possible to achieve more than partial or limited success even where an applicant did not receive all of the relief requested." (citing *Naekel v. Dep't of Transp.*, 884 F.2d 1378, 1379 (Fed. Cir. 1989))). On the other hand, if a plaintiff achieves "only partial or limited success," then a fully compensatory fee may be excessive. *Hensley*, 461 U.S. at 436; *see also Hubbard*, 480 F.3d at 1333 ("'[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.'") (quoting *Hensley*, 461 U.S. at 440).

This court has concluded that a plaintiff experiences "partial or limited success" typically where the plaintiff fails on the majority of its claims or recovers significantly less damages than the amount it originally sought. *See, e.g., Dalles Irrigation Dist.*, 91 Fed. Cl. at 703-04 (reducing attorneys' fees where plaintiff succeeded on three of its seven claims and recovered only 18% of the damages sought); *CEMS, Inc v. United States*, 65 Fed. Cl. 473, 483-84 (2005) (reducing award where plaintiff prevailed on only nine of its thirty claims and received slightly less than 24% of the damages it sought); *Filtration Dev. Co., LLC v. United States*, 63 Fed. Cl. 612, 627 (2005) (reducing plaintiff's award where court enjoined only one-quarter of the procurement at issue); *Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 82-84 (2002) (reducing attorneys' fees incurred in damages trial where plaintiff recovered 55% of the damages sought and the court found that "many of plaintiff's claimed costs" were "subsumed" in its other claims or were "otherwise unsubstantiated").

At an early procedural stage of this case, United Partition successfully resisted a claim by the government that the action should be dismissed on jurisdictional grounds. *See United Partition I*, 59 Fed. Cl. at 645. On the merits, United Partition successfully challenged the termination of its contract for default, prevailed in its opposition to the government's counterclaim for reprocurement costs, and recovered $87,624.50 — the price of its contract, $108,404, reduced by the costs associated with the nonconforming walls and the removal of the two buildings. *United Partition II*, 90 Fed. Cl. at 95.

Overall, United Partition experienced substantial success: it prevailed at each critical procedural stage of the litigation, succeeded on the merits of its claim, successfully defended against the government's counterclaim, and recovered nearly 81% of the damages that it sought. *See United Partition II*, 90 Fed. Cl. at 90-95. The court's findings for the defendant on the nonconforming walls and removal of two buildings and the consequent 19% offset to United Partition's damages reflected ancillary aspects of the dispute between the parties. United Partition prevailed on all of the major issues in the case, and its EAJA award should not be diminished on grounds of partial success. *See Naekel*, 884 F.2d at 1379-80 (refusing to reduce award where plaintiff prevailed on two out of the four issues of the appeal); *Information Sciences Corp. v. United States*, 86 Fed. Cl. 269, 290 (2009) (refusing to reduce award where court set aside a contract and ordered GSA to issue a revised solicitation but refused to grant injunctive relief), *amended on denial of reconsideration by Information Sciences Corp.*, 88 Fed. Cl. 626; *Keeton Corrs.*, 62 Fed. Cl. at 138-39 (allowing full recovery of attorneys' fees where court had denied plaintiff's motion for a temporary restraining order and a preliminary injunction).

Accordingly, the court finds that the "overall relief obtained by" United Partition is more appropriately characterized as an "excellent result" rather than a "limited success" and that the award of full attorneys' fees is commensurate to that result. *See Hensley*, 461 U.S. at 435-36; *see also Hubbard*, 480 F.3d at 1333.

4. *COLA adjustment.*

EAJA potentially allows a cost-of-living adjustment ("COLA") to be made to the statutory $125 per-hour cap on the award of attorneys' fees. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). Such an adjustment should be freely granted. *See Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir. 1988) (stating that absent "unusual circumstances," an award of EAJA attorneys' fees should

include a cost-of-living adjustment); *see also Payne v. Sullivan*, 977 F.2d 900, 903 n.2 (4th Cir. 1992) (acknowledging that many circuits "regard the cost of living adjustment as 'essentially perfunctory or even mandatory'" (citation omitted)).

To receive an award adjusted for the cost of living, a plaintiff must "allege[ ] that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')," *California Marine Cleaning*, 43 Fed. Cl. at 733, and supply the court with relevant CPI data. *See Lion Raisins*, 57 Fed. Cl. at 519. United Partition requests such an adjustment, *see* Pl.'s EAJA Appl. at 6-7, and it has supplied the pertinent data. *See id*. at Ex. I (U.S. Department of Labor CPI-U Data). The government does not contest application of a COLA.

March 1996 serves as the starting point to calculate the applicable COLA. *See Lion Raisins,* 57 Fed. Cl. at 519. The end date for calculating the COLA is the "final date on which the legal services were rendered." *Hillensbeck*, 74 Fed. Cl. at 483 (citing *Doty*, 71 F.3d at 387 ("The cost of living adjustment is measured from . . . the date of enactment of the EAJA . . . to the time the services were rendered.")). United Partition's attorneys provided services that are compensable under EAJA from May 2003 to September 2010, a period spanning 88 months. Rather than calculating the COLA for each month, United Partition has selected a mid-point inflation adjustment factor and has applied that factor to services rendered both before and after that mid-point. *See* Pl.'s EAJA Appl. at 6-7. The government does not contest this method. The court finds that the use of a mid-point adjustment factor is warranted in this case. *See Chiu*, 948 F.2d at 722 n.10 (noting that "in an appropriate case," the court may use a single mid-point adjustment factor applicable to services performed before and after that mid-point"); *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 79 (2007) (using a mid-point adjustment factor); *Lion Raisins*, 57 Fed. Cl. at 519 (endorsing a single mid-point adjustment factor); *California Marine Cleaning*, 43 Fed. Cl. at 734 (using a mid-point adjustment factor).

Because United Partition retained the services of two law firms in sequence, the court will calculate the attorneys' fees of each separately by using two mid-points. United Partition engaged the services of Mr. Dauer from October 2001 to December 2003, *see* Pl.'s EAJA Appl. at 7; however, United Partition may only recover those fees incurred from May 2003 onwards. The mid-point for Mr. Dauer's services is thus August 2003. Mr. Schor began providing legal services to United Partition in February 2005 and ended those services in September 2010, with the pending EAJA application, *see* Pl.'s EAJA Appl. at 7, yielding a mid-point of November 2007.[9] Given these mid-points, the adjusted rate for Mr. Dauer's services is $148.20 and the rate for Mr. Schor's services is $168.75.[10]

---

[9]The mid-point in time could be October or November 2007, but, because counsels' time is more heavily weighted toward the latter half of the entire period, the later month has been used.

[10]The formula for the adjusted rate is: $125.00 x (Mid-Point CPI) / (March 1996 CPI). *See Lion Raisins*, 57 Fed. Cl. at 519-20 n. 19. The mid-point CPI for August 2003 is 184.6, and the mid-point CPI for November 2007 is 210.2. Pl.'s EAJA Appl. at Ex. I. The March 1996 CPI is 155.7. *Id.*

5.  *Attorneys' fees related to United Partition's non-testifying expert.*

The government urges the court to exclude all attorneys' fees relating to an expert retained by United Partition because that expert "did not help United or in any way assist United in prevailing in this action."  *See* Def's Opp'n at 14.  United Partition avers that the retention of and work with its expert was a reasonable step taken in response to the government's litigation position.  *See* Pl.'s Reply at 11.  United Partition does not seek to recover the compensation paid to its expert but rather only the fees of its attorneys in working with its non-testifying expert.[11]

United Partition's invoices reveal that it retained its expert in an effort to address the fire rating of the walls it provided to Luke AFB.  *See* Pl.'s EAJA Appl., Ex. F at 58-64.  In light of the government's position that the inadequate fire rating of the walls justified the termination for default, United Partition's retention of an expert to investigate that issue cannot be described as unnecessary.  The fact that United Partition did not use the expert to testify does not mean that the expert contributed nothing to counsel's preparation for trial of the case.  Experts may explore certain issues for a party and provide meaningful assistance without testifying at trial or providing an ultimately successful defense respecting the issue for which they were retained. *See Baldi Bros. Constructors*, 52 Fed. Cl. at 85-86 (awarding expert fees where expert consulted on issue on which plaintiff was ultimately unsuccessful); *KMS Fusion*, 39 Fed. Cl. at 599 (noting that experts can provide "ancillary benefits" such as facilitating settlement and obviating the need to try certain issues).  The court finds that it was reasonable for United Partition to retain an expert to address the fire rating of the wall components, and that the attorneys' time spent in working with the expert on that issue — approximately 25 hours — was reasonable and is allowed.

6.  *Fees for work by paralegals and law clerks.*

A prevailing party that meets EAJA's other requirements may also recover fees for paralegals and law clerks at prevailing market rates.  *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008) (holding that paralegal expenses are "fees" under EAJA and thus recoverable at market rates, not cost); *JGB Enterprises, Inc. v. United States*, 83 Fed. Cl. 20, 32 (2008) (extending *Richlin*'s holding to law clerks).

United Partition seeks $14,512.50 in fees for paralegals and law clerks.  *See* Pl.'s Second Supp. EAJA Appl. at 1.  It urges the court to adopt the Laffey Matrix as a guide to the prevailing market rate for paralegals in the Washington, D.C. area and award it $100 per hour and $125 per hour for the paralegal services associated with Mr. Dauer's and Mr. Schor's efforts, respectively. *See* Pl.'s EAJA Appl. at 7.  The government urges the court to reduce United Partition's paralegal claims because "[b]oth EAJA case law and other recent decisions indicate that the rates for paralegals are generally at, and often below, $100 per hour."  Def.'s Opp'n at 17.  The

_____

[11]Because United Partition does not seek an award of fees for the expert's services, there is no need to consider the limitations imposed by 28 U.S.C. § 2412(d)(2)(A), which refers to an "expert witness" and requires that any report prepared by the expert be found "necessary for the preparation of the party's case."

government also requests that the court deduct fees for hours billed by paralegals for their performance of clerical tasks. *Id.*

Subsequent to the Supreme Court's 2008 ruling in *Richlin*, judges of this court have taken divergent approaches to determining the "prevailing market rate" for paralegals. For example, the court has awarded paralegal and law clerk fees at the rates at which those hours were actually billed to the plaintiff. *See JGB Enterprises, Inc.*, 83 Fed. Cl. at 31-32 & n.11 (awarding $100 per hour for an unadmitted attorney and $50 per hour for a law clerk, respectively); *Precision Pine & Timber, Inc. v. United States*, 83 Fed. Cl. 544, 553 (2008) (awarding $94.15 per hour for summer associates and paralegals), *appeal dismissed*, 331 Fed. Appx. 725 (Fed. Cir. 2009). In another decision, the court looked to information provided by the National Association of Legal Assistants' 2008 National Utilization and Compensation Survey Report ("NALA Report"), which resulted in a rate of $102 per hour. *See Information Sciences Corp.*, 86 Fed. Cl. at 291; *but see First Fed. Sav. and Loan Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 588 (2009) (rejecting the use of NALA rates because they do not include the D.C. area specifically). In the context of non-EAJA cases, the court has also used the Laffey Matrix,[12] which is prepared by the U.S. Attorney's Office for the District of Columbia, as "an accurate measure of the prevailing market rates for paralegal services." *First Fed. Sav. and Loan Ass'n of Rochester*, 88 Fed. Cl. at 589. Where available, the court has also relied on relevant decisions by district courts to establish the prevailing market rate for a particular geographic region. *See Dalles Irrigation Dist.*, 91 Fed. Cl. at 708.

Given that the Laffey Matrix is specifically tailored to provide prevailing market rates for paralegals in the District of Columbia and has achieved "broad acceptance" in the federal courts of this region, serving "as a guide in nearly every conceivable type of case," *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14 (D.D.C. 2008), the court will rely on the Laffey Matrix in this case. Using the same litigation midpoints for the COLA adjustment, the court finds that the appropriate rates for Mr. Dauer's and Mr. Schor's paralegals and law clerks are $105.00 and $125.00, respectively. *See* Pl.'s EAJA Appl. at Ex. J (Laffey Matrix).[13]

The government also objects to United Partition's fees for hours billed by paralegals for preparing and filing exhibits, contending that these are clerical tasks. *See* Def.'s Opp'n at 17-18.

---

[12] The Matrix is based on the rates allowed by the U.S. District Court for the District of Columbia initially in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled on an unrelated ground by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1816 (D.C. Cir. 1988) (*en banc*). The rates have been adjusted over time. *See First Fed. Sav. and Loan Ass'n of Rochester*, 88 Fed. Cl. at 586.

[13] One of Mr. Schor's paralegals, Darryl J. Taylor, was billed at a rate of $110.00 per hour for 6.3 hours. Pl.'s EAJA Appl., Ex. F at 104-108. United Partition cannot recover fees for these hours at a rate higher than that at which they were actually billed. *See KMS Fusion*, 39 Fed. Cl. at 605 ("To base an award on a rate above that incurred by plaintiff would be to create a windfall."); *Dickens v. Friendship-Edison P.C.S.*, 2010 WL 2867383, at *4 (D.D.C. July 21, 2010) (rejecting Laffey Matrix rates where they exceeded the actual billing rates). Therefore, those 6.3 hours of the paralegal fees will be recovered at $110.00 per hour.

The filing of pleadings is clerical work. *See Dalles Irrigation Dist.*, 91 Fed. Cl. at 708; *but see JGB Enterprises, Inc.*, 83 Fed. Cl. at 32. For this reason, the court will exclude from United Partition's award 0.9 hours billed by a paralegal for filing a motion. Pl.'s EAJA Appl. at Ex. F. However, the remaining two invoice entries by paralegals that include time billed for filing pleadings and motions also include time spent preparing and completing those submissions. *See id.* The court does not consider organizing, preparing, and completing filings to be "clerical" in nature as these tasks require legal experience and training. *See Information Sciences Corp.*, 86 Fed. Cl. at 291.

Where nonreimbursable tasks are included in the same invoice as reimbursable tasks, the court may approximate the amount of time that would have been expended on each task and deduct the hours accordingly. *See Information Sciences Corp.*, 88 Fed. Cl. at 633-35. In this instance, however, the time expended on the actual filing of the exhibits and motions, a task that takes minutes, would have been de minimus compared to the time spent organizing and completing those documents prior to filing. In these particular circumstances, the court will not discount United Partition's award to account for what would be a very small fraction of unreimbursable time. *See Hubbard*, 480 F.3d at 1334-35 ("The trial court has considerable discretion in determining reasonable attorney fees.").

### 7. *Fees incurred in preparing and defending the EAJA application.*

United Partition is also entitled to recover fees and expenses incurred in preparing and defending its EAJA application without regard to whether the government's position in opposing the application, as contrasted to its overall position in the litigation, was substantially justified. *Jean*, 496 U.S. at 158-60. However, "the court may recognize and discount '[e]xorbitant, unfounded, or procedurally defective fee applications.'" *Information Sciences Corp.*, 88 Fed. Cl. at 634 (quoting *Jean*, 496 U.S. at 163.

United Partition spent 69.9 hours preparing its EAJA application. *See* Pl.'s Supp. EAJA App1. at 1.[14] The court considers that seventy hours devoted to preparing an EAJA application is excessive and therefore will reduce those hours by 25%, allowing 52.4 hours for the EAJA application. *See Savantage Fin. Servs., Inc. v. United States*, 2008 WL 4443095, at *7 (Fed. Cl. Sept. 29, 2008) (counsel spent 36.8 hours on an EAJA application, including 18.9 hours for work on the application and 17.9 hours for research and other preparatory work.); *Prowest Diversified, Inc. v. United States*, 40 Fed. Cl. 879, 889 (1998) (counsel spent 57.6 hours on an EAJA application). An additional 30.7 hours were expended in defending United Partition's EAJA application. *See* Pl.'s Second Supp. EAJA Appl. at 1. Given the number and breadth of the government's objections, the court finds these subsequently expended hours to be reasonable and will include them in United Partition's award.

---

[14]United Partition's original counsel spent 6 hours researching EAJA and preparing a memo on this topic in June of 2003. *See* Pl.'s EAJA Appl., Ex. G at 11 (Invoice 440999 (Aug. 14, 2003)). Because there is no evidence that United Partition benefitted from this work, these hours will be excluded from those subject to the EAJA final award.

8. *Miscellaneous expenses.*

United Partition seeks to recover legal research expenses, transcript fees, GSAR forms, PACER fees, clerk's fees, copying expenditures, a parking fee, postage, long-distance phone calls, filing and service fees, and shipping expenses. *See* Pl.'s EAJA Appl., Ex. K (Fees and Cost Recovery Charts). Those outlays to which the government does not object will be included in United Partition's award as "expenses" under 28 U.S.C. § 2412(d)(1)(A). The government objects only to the recovery of photocopying expenses and court reporter fees, arguing that because such items are listed as "costs" under 28 U.S.C. § 1920, United Partition may not recover them as "expenses" under 28 U.S.C. § 2412(d)(1)(A). *See* Def.'s Opp'n at 17-18.

The government is correct that photocopying and court reporter fees are listed as "costs" under 28 U.S.C. § 1920, and that United Partition did not receive a judgment for costs. *See United Partition II*, 90 Fed. Cl. at 95. Therefore, the precise question at hand is whether an expenditure listed as a "cost" under 28 U.S.C. § 1920 is recoverable as an "expense" under 28 U.S.C. § 2412(d)(1)(A), particularly in an instance where "costs" were not awarded to the plaintiff.

The Federal Circuit's decisions in *Bennett v. Department of the Navy*, 699 F.2d 1140 (1983), and *Oliveira*, 827 F.2d 735, guide this inquiry. In *Bennett*, the Federal Circuit faced the question of whether, under 5 U.S.C. § 7701(g)(1), which explicitly allows for the recovery of "attorneys' fees" but not "expenses" or "costs" incurred in actions before the Merit Systems Protection Board, a plaintiff could recover expenditures listed as "costs" under 28 U.S.C. § 1920. *See* 699 F.2d at 1142-43. The court held that recovery of those expenditures was not permitted under that statute because "[t]he concept of attorney fees does not comprise those expenses that are commonly known as 'taxable costs' . . . set forth under 28 U.S.C. § 1920." *Id.* at 1143. The court looked to EAJA for guidance in its interpretation of 5 U.S.C. § 7701(g)(1) and concluded that because 28 U.S.C. § 2412(d)(1)(A) separates "costs" from "fees and other expenses" and subjects them to different standards, it seems "evident that when Congress enacted the EAJA it considered costs and attorney fees to be distinct concepts, and that costs and expenses are not synonymous but are words of art." *Id.* at 1144. The court concluded that "the expenses listed in Section 1920 may be recovered only if they are allowed by that section." *Id.*

The Federal Circuit revisited the issue in *Oliveira*. In *Oliveira*, the Claims Court had disallowed plaintiff's expenditures for photocopying, printing and binding of briefs, telephone, postage, delivery services, and admission to the court's bar. *See Oliveira v. United States*, 11 Cl. Ct. 101, 108-09 (1986), *aff'd in part, rev'd in part by* 827 F.2d 735. Citing *Bennett*, the trial court had first found that plaintiff's photocopying costs were not recoverable under 28 U.S.C. § 2412(d)(1)(A) because photocopying is listed as a "cost" under 28 U.S.C. § 1920, and the trial court had disallowed an award of costs in its judgment. *Id.* at 109. Alternatively, the trial court held that the above-mentioned expenses were "exceptional expenses that do not arise as matter of course in providing legal services," and thus were not recoverable under 28 U.S.C. § 2412(d)(1)(A). *Id.*

In *Oliveira*, the Federal Circuit reversed the Claims Court on its second ground for disallowing the expenses, rejecting its distinction between exceptional and ordinary expenses. *See Oliveira*, 827 F.2d at 743-44. The court of appeals noted that "[a]lthough the EAJA provides

examples . . . of legal expenses for which recovery may be granted, this is not an exclusive listing." *Id.* at 744.  It continued:  "We interpret 28 U.S.C. § 2412 to mean that the trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." *Id.*  While the Federal Circuit did not explicitly address the trial court's first ground for disallowing the plaintiff's expenses, its remand to the court to consider whether plaintiff's expenditures could be recoverable as expenses, *see id.*, signaled its rejection of a categorical disallowance of the recovery of "expenses" under 28 U.S.C. § 2412(d)(1)(A) when those outlays are listed as "costs" under 28 U.S.C. § 1920.

Given the seeming inconsistencies between *Bennett* and *Oliveira*, it is not surprising that this court has since fluctuated on whether or not expenditures listed as "costs" under Section 1920 can be awarded as "expenses" under Section 2412.  *Compare Hopi Tribe v. United States*, 55 Fed. Cl. 81, 100 (2002) ("Under the Equal Access to Justice act ("EAJA"), 28 U.S.C. § 2412, the Federal Circuit has rejected the claim that parties could not recoup expenses for photocopying, printing and binding of briefs, telephone, postal, and overnight delivery services" (citing *Oliveira*, 827 F.2d at 743-33)); *R.C. Const. Co., Inc. v. United States*, 42 Fed. Cl. 57, 63-64 (1998) (concluding that *Oliveira* suggests that "fees and other expenses" under Section 2412(d)(1)(A) "should be interpreted broadly enough to include expenses" listed as costs under Section 1920); *and PCI/RCI*, 37 Fed. Cl. at 791 (awarding photocopying costs as expenses (citing *Oliveira*, 827 F.2d at 744)), *with Weaver-Bailey Contractors, Inc. v. United States*, 24 Cl. Ct. 576, 581 (1991) (items listed as "costs" under Section 1920 must be recovered under Section 1920 (citing *Bennett*, 699 F.2d at 1144)); *and Kevaya Const. Co. v. United States*, 15 Cl. Ct. 135, 140 (1988) (disallowing the recovery of expenditures listed under Section 1920 where the court did not award "costs" and plaintiff did not reserve any claim for "costs" in its stipulation that stated it resolved "all claims related to the action" (citing *Bennett*, 699 F.2d at 1144)).

A modest measure of clarity is found in the Federal Circuit's subsequent references to *Bennett*.  The Federal Circuit has cited *Bennett* for the proposition that "costs *or* expenses have been defined as photocopying, deposition costs, witness fees, and other expenses" and "[s]uch items are not recoverable absent express statutory authorization for an award of 'costs' *or* 'expenses.' "  *Bleschke v. United States Postal Serv.*, 22 F.3d 1106, 1994 WL 108051, at *2 (Fed. Cir. 1994) (Table, Text in Westlaw) (emphasis added) (denying recovery of copying, stationery, mailing costs, and travel costs because in that case there was "no express statutory authorization for an award of expenses other than attorney fees"); *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1462 n.29 (Fed. Cir. 1986) (*en banc*) (citing *Bennett* for the proposition that "[p]hotocopying, deposition costs, witness fees, and other expenses are 'taxable costs' *or* 'expenses,' " and "[c]osts *and* expenses are not recoverable absent express statutory authorization for award of 'costs' *or* 'expenses,' as under the EAJA") (emphasis added).

Thus, the Federal Circuit's citations to *Bennett* refer to items listed as "costs" under Section 1920 as also constituting "expenses" and indicate that both "costs" and "expenses" are allowable so long as there is statutory authorization for costs or expenses.  The Federal Circuit's recasting of *Bennett* and its later decision in *Oliveira* persuade the court that *Oliveira* provides the controlling standard for this question.  *See also Cook v. Brown*, 6 Vet. App. 226, 237-40 (1994) (distinguishing *Bennett* and concluding that "costs" are recoverable under 28 U.S.C. 2412(d)(1)(A)).  Accordingly, contrary to the government's argument, the court will not exclude

United Partition's photocopying and court reporter expenditures from an award of "expenses" under 28 U.S.C. § 2412(d)(1)(A) simply because they are listed as "costs" under 28 U.S.C. § 1920.  Rather, the court finds that the photocopying expenses and court reporter fees at issue are reasonable, were incurred in preparation for, and in conjunction with, the litigation in this court, and would "customarily be charged to the client."  *See Oliveira*, 827 F.2d at 744.  It will therefore award United Partition's photocopying and court reporter expenditures incurred after May 15, 2003 as "expenses" under 28 U.S.C. § 2412.

**CONCLUSION**

For the reasons stated, United Partition's application for attorneys' fees and expenses under EAJA is GRANTED IN PART.  United Partition is awarded attorneys' fees in the amount of $101,876.85, and costs and expenses of $8,545.05, for a total of $110,421.89.  The clerk shall enter judgment for United Partition in the amount of $110,421.89.

It is so ORDERED.


s/ Charles F. Lettow_____
Charles F. Lettow
Judge